**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT DICICCO, on behalf of himself and all others similarly situated, | |
| Plaintiff, | DOCKET NO. 1:19-cv-11092-ER |
| v. | |
| PVH CORPORATION, | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES..............................................................ii-v

Introduction.............................................................................1

I.   DEFENDANT'S ARGUMENTS REGARDING THE NEW JERSEY
     CONSUMER FRAUD ACT ARE WITHOUT MERIT......................................3

     A.  Plaintiff Has Properly Alleged an Ascertainable Loss Under the NJ CFA...............4

         1.  The Complaint Properly States an Ascertainable Loss Under the
             Benefit of the Bargain Method..............................................8

         2.  Plaintiff Has Also Pleaded an Ascertainable Loss Under the Out
             of Pocket Loss Method.....................................................16

     B.  Plaintiff Has Properly Alleged a Causal Connection Between the
         Loss and the Unlawful Act...................................................17

II.  DEFENDANT'S TRUTH IN CONSUMER CONTRACT, WARRANTY
     AND NOTICE ACT ARGUMENT IS WITHOUT MERIT................................18

III. PLAINTIFF'S COMPLAINT PLEADS PLAUSIBLE ALLEGATIONS
     THAT THE FORMER PRICES LISTED ON DEFENDANT'S TAGS
     WERE FALSE AND INFLATED, AND DOES SO IN MORE THAN
     ENOUGH DETAIL TO PUT DEFENDANT ON NOTICE OF THE
     MISCONDUCT OF WHICH IT IS ACCUSED.......................................18

IV.  DEFENDANT'S STATUTE OF LIMITATIONS ARGUMENT IS
     WITHOUT MERIT AND ALSO IMPROPERLY SEEKS TO MAKE
     A PREEMPTIVE STRIKE ON CLASS CERTIFICATION ISSUES.....................23

V.   PLAINTIFF HAS PLEADED A VIABLE CLAIM FOR BREACH OF
     THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
     UNDER NEW JERSEY LAW....................................................24

Conclusion..............................................................................25

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*Am. Pipe & Constr. Co. v. Utah*,
　　414 U.S. 538, 540, (1974)……………………………………………..24

*Arista Records, LLC v. Doe*,
　　604 F.3d 110, 121-122 (2nd Cir. 2010)……………………………………….19

*Belcastro v. Burberry*,
　　2017 WL 5991782 at 1 (S.D.N.Y., Dec 1, 2017)…………………………………..15

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544, 556 (2007)……………………………………………….19, 20, 21, 22

*Ca. Pub. Emples. Ret. Sys. v. Caboto-Gruppo Intesa BCI (In re WorldCom Sec. Litig.)*,
　　496 F.3d 245, 256 (2d Cir. 2007)………………………………………..24

*Cannon v. Ashburn Corp.*,
　　No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040,
　　at *18-*20 (D.N.J. Dec. 7, 2016)…………………………...4, 6, 11, 12, 13, 14, 15

*Carey v. Berisford Metals Corp.*,
　　No. 90 Civ. 1045 (JMC), 1991 U.S. Dist. LEXIS 3776,
　　at *13 (S.D.N.Y. Mar. 28, 1991)…………………………………………...21

*Chenensky v. N.Y. Life Ins. Co.*,
　　No. 07 Civ. 11504, 2011 U.S. Dist. LEXIS 48199,
　　2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)…………………………..23

*Dicuio v. Brother Int'l Corp.*,
　　2012 U.S. Dist. LEXIS 112047 (D.N.J. August 9, 2012)………………….5, 7, 16, 17

*Furst v. Einstein Moomjy, Inc.*,
　　182 N.J. 1, at 15-18, 860 A.2d 435,
　　at 442-445 (N.J. 2004)…………………………….......2, 3, 4, 6, 8, 9, 10, 11, 12, 14, 15

*Galicki v. New Jersey*,
　　2016 WL 4950995, at *30 (D.N.J. 2016)……………………………………24, 25

*Gelles v. TDA Indus., Inc.*,
　　No. 90 Civ. 5133 (MBM), 1991 U.S. Dist. LEXIS 3135,
　　at *16-17 (S.D.N.Y. Mar. 18, 1991)………………………………………..20

*Gerboc v. ContextLogic*,
867 F.3d 675 (6th Cir. 2017)…………………………………………………..15

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098, 1107 (9th Cir. 2013)…………………………………………….17

*IHS Dialysis v. Davita, Inc.*,
2013 U.S. Dist. LEXIS 47532, at *4 (S.D.N.Y. Mar. 31, 2013)…………………………...20

*International Union v. Merck & Co.*,
384 N.J. Super. 275, 291, 384 N.J. Super. 275, 291894 A.2d 1136, 1145
(N.J. App. Div. 2006)……………………………………………………………..4

*Kavky v. Herbalife Intern. of Am.*,
359 N.J. Super. 497, 504, 820 A.2d 677, 681-82 (Super. Ct. App. Div. 2003)…………...3

*Kim v. Carter*,
598 F.3d (7th Cir. 2010)………………………………………………………….15

*Kleinman v. Merck & Co.*,
417 N.J. Super. 166, 182, 8 A.3d 851, 861 (N.J. Super. Ct. 2009)…………………………6

*Koppel v. 4987 Corp.*,
167 F.3d 125 (2nd Cir. 1999)…………………………………………………….19

*Lee v. Carter-Reed Co., L.L.C.*,
203 N.J. 496, 528, 4 A.3d 561, 580 (2010)………………………………………...16, 17

*Munning v. Gap, Inc.*,
238 F. Supp. 3d 1195, 1200 (N.D. Cal. 2017)……………………………..4, 7, 16, 17, 18

*Nelson v. Xacta 3000, Inc.*,
No. 08-5426 (MLC), 2010 U.S. Dist. LEXIS 47128, at *18 n.3
(D.N.J. May 12, 2010)……………………………………………………………5

*New Mea Constr. Corp. v. Harper*,
203 N.J. Super. 486, 501-02, 497 A.2d 534, 543 (Super. Ct. App. Div. 1985)…………..3

*Novak v. Kasaks*,
216 F.3d 300, 314 (2d Cir. 2000)………………………………………………...20

*Payne v. Fujifilm U.S.A., Inc.*,
No. 07-cv-385, 2007 U.S. Dist. LEXIS 94765, *35 (D.N.J. Dec. 28, 2007)…………….25

*Perkins v. DaimlerChrysler Corp.*,
383 N.J. Super. 99, 111, 890 A.2d 997, 1003-04 (Super. Ct. App. Div. 2006)…………..6

*Pullman v. Alpha Media Publ. Inc.*,
     2013 U.S. Dist. Lexis 50697 (S.D.N.Y. 2013)...................................................20

*Ramos v. PVH Corporation*,
     United States District Court, Eastern District of California,
     Case No. 2:16-CV-02258-JAM-KJN.........................................................19, 20

*Rana v. Islam*,
     305 F.R.D. 53, 58 (S.D.N.Y. 2015).......................................................20

*Reynolds v. Lifewatch, Inc.*,
     136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015).................................................23

*Shaulis v. Nordstrum*,
     9865 F.3d 1 (1st Cir. 2017)............................................................15

*Shelton v. Rest.com, Inc.*,
     Civil Action No. 10-0824 (JAP), 2010 U.S. Dist. LEXIS 59111, at *8
     (D.N.J. June 15, 2010)..................................................................7

*Smajlaj v. Campbell Soup Co.*,
     782 F. Supp. 2d 84, 99 (D.N.J. 2011).....................................................11

*Spade v. Select Comfort Corp.*,
     232 N.J. 504, 523, 181 A.3d 969, 980 (2018)............................................18

*Talalai v. Cooper Tire & Rubber Co.*,
     360 N.J. Super. 547, 564, 823 A.2d 888, 898-99 (N.J. Super. Ct. 2001)....................6

*Tripicchio v. PVH Corporation*,
     United States District Court, Southern District of New York,
     Docket No. 1:19-cv-05729-ER.........................................................23, 24

*Turkmen v. Ashcroft*,
     589 F.3d 542, 546 (2nd Cir. 2009).......................................................20

*United States v. Wells Fargo Bank, N.A.*,
     972 F. Supp. 2d 593, 617 (S.D.N.Y. 2013).................................................21

*Waldron v. Jos. A. Bank Clothiers*,
     2013 WL 12131719, at *4 (D.N.J. Jan. 28, 2013)..........................................15

# STATUTES

Page(s)

New Jersey Consumer Fraud Act…………………………………………………………...passim

New Jersey Court Rule 1:36-3……………………………………………………………....14

N.J.A.C. 13:45A-9.2(a)(9)…………………………………………………………...2, 3, 9

N.J.A.C. § 13:45A-9.3(a)(3)…………………………………………………………..19

N.J.A.C. § 13:45A-9.4(a)(5)…………………………………………………………..19

N.J.A.C. § 13:45A-9.4(a)(6)…………………………………………………………..19

N.J.A.C. 13:45A-9.6…………………………………………………………2, 3, 10, 18

N.J.A.C. 13:45A-9.6(d)…………………………………………………………..11

Rule 9…………………………………………………………………………..19, 21, 22

Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, *et seq*…………...18

**Introduction**

This is a proposed class action, brought under New Jersey law, on behalf of a class who purchased purportedly-discounted consumer goods at Defendant's Van Heusen stores located in New Jersey and were subjected to the unlawful uniform sales and marketing scheme described in greater detail in the Complaint. (Complaint at Paragraphs 1-2).

Briefly summarizing the Complaint, Defendant employs a uniform policy at its Van Heusen stores in which Defendant makes false, deceptive and misleading statements relating to the former prices of its goods and the benefit of the bargain being offered to consumers. *Id.* at Paragraph 2. This scheme involves the use of two prices which are displayed to consumers for each item sold by Defendant. *Id.* at Paragraphs 2-6. First, Defendant has affixed price tags to the items, listing what purport to be higher purported former prices for the items. *Id.* at Paragraphs 2-4. Second, above each rack of items is a sign, where Defendant lists a lower, purportedly discounted "sale" price for the items. *Id.* at Paragraphs 5-6. The operative facts alleged in the Complaint are: 1) that the higher purported former "reference" prices listed on these tags are actually false and inflated "prices" invented by Defendant as a marketing tool to induce customers to buy (Complaint at Paragraphs 3, 10-11, 85, 96, and 107); 2) that the items have never actually been sold by Defendant, or anyone else, for the higher purported prices listed on these tags (Complaint at Paragraphs 10-11, 66-67, 81-85, 92-94, and 173-175); 3) that the goods to which Defendant has attached these tags lack sufficient objective value and worth to ever command those higher prices in the marketplace (Complaint at Paragraphs 85, 96, 107, and 173-175); 4) that the lower purported "sale" prices listed on Defendant's signs are, in actuality, the same prices at which these items are regularly sold by Defendant and others in the ordinary course of business and that this lower amount represents their true objective value and worth in

the marketplace) (Complaint at Paragraphs 12, 62, 85, 88, and 173-175). It is specifically alleged in the Complaint that the purpose of this policy is to falsely represent to consumers that the goods bearing such tags have an objective worth, quality and value which is greater than their actual objective worth, quality and value, and that customers are being offered a "bargain" under which they can obtain this merchandise for much less than its usual selling price in the market place. (Complaint at Paragraphs 11, 85, 96, 107, 114, and 173-175).

The practice alleged herein is illegal in New Jersey.  N.J.A.C. 13:45A-9.6 is a New Jersey regulation which states **"An advertiser shall not use a fictitious former price"** and which also specifically provides a private cause of action under the New Jersey Consumer Fraud Act, stating **"Use of a fictitious former price will be deemed to be a violation of the Consumer Fraud Act."** *See also* N.J.A.C. 13:45A-9.2(a)(9), providing that **"the following practices shall be unlawful...The making of false or misleading representations of facts concerning** *the reasons for, existence* **or amounts** *of price reductions*, **the nature of an offering or the quantity of advertised merchandise available for sale."** (emphasis added). Under New Jersey law, it is presumed that the objective worth and value of merchandise offered for sale is the price at which it is regularly sold in the marketplace in the ordinary course of business. *See Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, at 15-18, 860 A.2d 435, at 442-445 (N.J. 2004). The New Jersey Supreme Court has also held that, when a merchant makes a representation on a "sale" tag as to the item's purported former or "regular" price in the marketplace, that is a legally binding representation of the value of the benefit which the customer can reasonably expect to receive under the promised bargain. *See Furst*, 182 N.J. at 15-18, 860 A.2d at 442-445. Applying these principles to the case at bar, it is clear that the Complaint pleads viable claims that Defendant has breached New Jersey law.

I.      **DEFENDANT'S ARGUMENTS REGARDING THE NEW JERSEY CONSUMER FRAUD ACT ARE WITHOUT MERIT**

As described by the New Jersey Supreme Court, **"[t]he Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public."** *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11-12, 860 A.2d 435, 441 (N.J. 2004). As New Jersey court have repeatedly held for decades, **"[t]he available legislative history demonstrates that the [NJ CFA] was intended to be one of the strongest consumer protection laws in the nation."** *New Mea Constr. Corp. v. Harper*, 203 N.J. Super. 486, 501-02, 497 A.2d 534, 543 (Super. Ct. App. Div. 1985). For this reason, the **"history of the [NJ CFA] is one of constant expansion of consumer protection."** *Kavky v. Herbalife Intern. of Am.*, 359 N.J. Super. 497, 504, 820 A.2d 677, 681-82 (Super. Ct. App. Div. 2003).

The Complaint pleads a viable claim against Defendant based on an unconscionable commercial practice in the sale of goods. There is no question the practice alleged is illegal under New Jersey law. N.J.A.C. 13:45A-9.6 – a NJ CFA regulation – specifically states: **"An advertiser shall not use a fictitious former price…"**. The regulation further makes clear that this practice violates the NJ CFA, since N.J.A.C. 13:45A-9.6 expressly states: **"Use of a fictitious former price will be deemed to be a violation of the Consumer Fraud Act."**[1] (emphasis added). *See also* N.J.A.C.13:45A-9.2 (a)(9), providing **that "the following practices shall be unlawful…The making of false or misleading representations of facts *concerning the reasons for, existence* or amounts *of price reductions*, the nature of an offering or the quantity of advertised merchandise available for sale."** (emphasis added).

---

[1] This regulatory language further undercuts Defendant's argument. The NJ CFA requires a consumer to have an ascertainable loss. If, as Defendant contends, a consumer victimized by a fake former price has no such loss, the language in N.J.A.C. 13:45A-9.6 which states: **"Use of a fictitious former price will be deemed to be a violation of the Consumer Fraud Act"** would be reduced to meaningless surplusage.

In the last four years, at least two federal courts have upheld NJ CFA claims based on nearly identical allegations as are made in the case at bar.  *See Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1200 (N.D. Cal. 2017) (upholding a New Jersey Consumer Fraud Act claim in a case brought by a New Jersey citizen which alleged a scheme by a retailer to list false, inflated alleged former prices on clothing tags); *Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040, at *18-*20 (D.N.J. Dec. 7, 2016) (Exhibit A) (District of New Jersey denied a motion to dismiss a New Jersey Consumer Fraud Act claim which arose from the use of false "original" prices, and the illusory purported "discounts" based on those inflated former prices).

A.  **Plaintiff Has Properly Alleged an Ascertainable Loss Under the NJ CFA**

Plaintiff's Complaint <u>is not</u> based on subjective regret, subjective opinion, or subjective anything. It is based on objective fact applied to established New Jersey law. Defendant induced Plaintiff to make a purchase by making false and inflated factual statements about the objective worth, quality and value of the merchandise being offered. Defendant then delivered goods to Plaintiff which had less objective worth, quality and value than what Defendant had previously promised and represented.  This is an objective measure of loss under the New Jersey Consumer Fraud Act.

The concept of "ascertainable loss" under the statute must be construed expansively in order to fulfill the NJ CFA's broad remedial purpose.  *See e.g. International Union v. Merck & Co.*, 384 N.J. Super. 275, 291, 384 N.J. Super. 275, 291 894 A.2d 1136, 1145 (N.J. App. Div. 2006) (**"Ascertainable loss has been broadly defined as more than a monetary loss and encompasses situations where 'a consumer receives less than what was promised."**). *See also Furst v. Einstein Moomjy*, 182 N.J. 1, 14-18, 860 A.2d 435, 442-444 (N.J. 2004), defining

an ascertainable loss under the NJ CFA as more than what the consumer paid out of pocket, but also by the loss of the full benefit of the promised bargain, holding **"[t]he 'expectation interest' of the consumer who purchases merchandise at a discount is the benefit of the bargain"** noting: **"The consumer, surely, would not think that he is getting a bargain if the product he purchases is worth no more than the price he paid."**

Contrary to Defendant's assertion, the NJ CFA <u>does not</u> require a plaintiff to actually plead the amount of the ascertainable loss in the complaint. Indeed, the District of New Jersey has repeatedly held this. For example, in *Dicuio v. Brother Int'l Corp.*, 2012 U.S. Dist. LEXIS 112047 (D.N.J. August 9, 2012) at *21 (Exhibit B hereto), the District of New Jersey denied a motion to dismiss a NJ CFA claim, holding that under the "ascertainable loss" requirement of the NJ CFA, the exact amount of the alleged ascertainable loss <u>need not be pleaded in the complaint at all</u>, stating: **"While these latter plaintiffs do not specify the exact amount that they expended for the color toner cartridges that were not depleted, *<u>the exact amount need not be plead in the complaint</u>* but can be established by proofs later in the proceeding."** (emphasis added). *See also In re Gerber Probiotic Sales Practices Litig.*, Civil Action No. 12-835 (JLL), 2013 U.S. Dist. LEXIS 121192, at *16 n.4 (D.N.J. Aug. 22, 2013) (Exhibit C hereto) **("Even under the more exacting standard of Rule 9(b), courts in this District have held that an exact dollar amount is not required to plead an ascertainable loss under the New Jersey Consumer Fraud Act.");** *Nelson v. Xacta 3000, Inc.*, No. 08-5426 (MLC), 2010 U.S. Dist. LEXIS 47128, at *18 n.3 (D.N.J. May 12, 2010) (upholding NJ CFA claim where plaintiff **"does not allege the specific purchase price of a package"** because **"the approximate price is presumably known to all parties"** holding **"A specific dollar amount is not required by Rule 9(b)."**).

To the contrary, New Jersey courts have upheld NJ CFA claims where the amount of the ascertainable loss is not even known at the time of pleading. *See Talalai v. Cooper Tire & Rubber Co.*, 360 N.J. Super. 547, 564, 823 A.2d 888, 898-99 (N.J. Super. Ct. 2001) (**"this court holds that one has suffered an ascertainable loss under the New Jersey Consumer Fraud Act where that loss is measurable –** *even though the precise amount is not known.*") (emphasis added); *Kleinman v. Merck & Co.*, 417 N.J. Super. 166, 182, 8 A.3d 851, 861 (N.J. Super. Ct. 2009) (holding with regard to a NJ CFA claim that **"the precise amount of damages need not be known as long as the damages are measurable."**).

Nor does the NJ CFA require a plaintiff to plead in the complaint the actual evidence that will be used to prove the loss, or the manner in which the ascertainable loss will be calculated; such issues being left for summary judgment and trial.[2] *See Perkins v. DaimlerChrysler Corp.*,

---

[2] Moreover, the Complaint actually <u>does</u> contain enough information to calculate Plaintiff's ascertainable loss under New Jersey law. As explained in greater detail in Section I (A)(1), *infra*, the New Jersey Supreme Court in *Furst* discussed at length the "benefit of the bargain" method for calculating ascertainable loss under the NJ CFA where a seller lists a purported former "regular" price and "sale" price of an item. *Furst* held, *inter alia*, that the price at which an item is regularly sold in the marketplace in the ordinary course of business is presumptive evidence of the item's objective worth and value under New Jersey law. *Furst*, 182 N.J. at 15-18, 860 A.2d at 442-445. *Furst* also held, *inter alia*, that a seller's statement on a tag as to the former "regular" or "comparison" price of the item is a legally binding representation by the seller of the item's purported objective value and worth under New Jersey law (*i.e.* the value of the benefit the consumer may reasonably expect to receive under the bargain). *Furst*, 182 N.J. at 15-18, 860 A.2d at 442-445. Applying this New Jersey law to the facts alleged in the Complaint, the basis of Plaintiff's ascertainable loss is clear. The Complaint alleges that the lower purported "sale" prices listed by Defendant are, in reality, the very same prices at which Defendant regularly sells these items in the marketplace in the ordinary course of business. *See* Complaint at Paragraphs 12, 70, 88, 99 and 110. The Complaint also alleges that the higher purported former/reference prices listed by Defendant on the tags were completely fictitious and inflated to a level well beyond any real price at which the items have ever actually been sold by anyone in the marketplace. *See* Complaint at Paragraphs 18, 53, 93 and 173-175. Put simply, the Complaint alleges that Defendant promised that Plaintiff would receive items with a higher objective value and worth than the clothing Plaintiff actually received. The difference in value between the false and inflated "high" value of the item – the objective value and worth represented and promised by Defendant on its tags – and the lower objective value and worth the item actually possessed, as proven by the fact that the item's regular price in the marketplace was always that lower price, is a calculable ascertainable loss under the principles outlined in *Furst*. *See* Section I (A)(1), *infra*. *See also Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040, at *18-*20 (D.N.J. Dec. 7, 2016) (Exhibit A) (District of New Jersey denied motion to dismiss a New Jersey Consumer Fraud Act claim which was highly similar to the case at bar, which arose when a seller listed

383 N.J. Super. 99, 111, 890 A.2d 997, 1003-04 (Super. Ct. App. Div. 2006), where the New Jersey Appellate Division rejected an argument that a NJ CFA plaintiff must plead the evidence needed to establish the ascertainable loss in the complaint to survive a motion to dismiss, holding:

> **"Here, plaintiff alleged in her complaint that she suffered an ascertainable loss. She did not allege the nature of that loss, *nor was she so required at that stage. Defendant's motion to dismiss*, unlike the summary judgment procedure, *did not require, in order to avoid dismissal, that plaintiff provide evidential material to rebut defendant's contention that she had not sustained an ascertainable loss.*" (emphasis added)**

*See also Shelton v. Rest.com, Inc.*, Civil Action No. 10-0824 (JAP), 2010 U.S. Dist. LEXIS 59111, at *8 (D.N.J. June 15, 2010) (Exhibit D hereto) holding with regard to a NJ CFA claim:

> **"In satisfying the pleading standard on a motion to dismiss, a plaintiff must allege in her complaint that she suffered an ascertainable loss, but *need not provide evidence of the nature of the loss or the diminution in value* as required in a summary judgment motion." (emphasis added)**

With regard to the ascertainable loss under the NJ CFA, **"there are generally two methods by which a plaintiff may prove loss – the benefit-of-the-bargain rule, or the out-of-pocket rule."** *Dicuio v. Brother Int'l Corp.*, No. 11-1447 (FLW), 2012 U.S. Dist. LEXIS 112047, at *19 (D.N.J. Aug. 9, 2012) (Exhibit B hereto). *See also Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1200 (N.D. Cal. 2017) (applying the New Jersey Consumer Fraud Act to a case alleging use of false and inflated former prices on price tags).[3] In the case at bar, the Complaint properly alleges an ascertainable loss under both methods.

---

false and inflated "original" prices on purportedly "discounted" bottles of wine, when the actual value of the wine was alleged to be lower than the fake former prices the defendant claimed).

[3] The facts alleged in *Munning*, as well as the New Jersey legal claims raised therein, were identical to those raised in the case at bar in all material respects and the federal court there found an ascertainable loss under the NJ CFA had been pleaded.

1. <u>**The Complaint Properly States an Ascertainable Loss Under the Benefit of the Bargain Method**</u>

In *Furst v. Einstein Moomjy*, 182 N.J. 1, 7-11, 860 A.2d 435, 440-443 (N.J. 2004), the New Jersey Supreme Court held in a unanimous, precedential opinion that depriving the consumer of the full benefit of the bargain promised by the seller was a proper ascertainable loss under the NJ CFA. Like the case at bar, *Furst* involved the purchase of merchandise which was purportedly being sold at a discount. *Furst*, 182 N.J. at 6, 860 A.2d at 438. Like the case at bar, the seller in *Furst* had listed both a purported regular price for the item and a purported sale price. *Furst*, 182 N.J. at 6, 860 A.2d at 438 (**"Plaintiff paid $1,199.00 for the carpet, which the sales tag stated was a reduction from the 'regular price' of $5,775."**). Dissatisfied with the rug after purchase, the plaintiff insisted that his damages should be measured by the value of what he was promised on Defendant's tag – a rug actually worth $5,775 – and thus he should be given either a replacement rug actually worth $5,775 or $5,775 in cash. 182 N.J. at 7-9, 860 A.2d at 438-440. The rug merchant contended the loss was only the purported "sale" price paid by the consumer of $1,199. *Furst*, 182 N.J. at 8-10, 860 A.2d at 438-440.

In the NJ CFA case which arose from the dispute, the New Jersey Supreme Court held that the consumer's "ascertainable loss" under the NJ CFA <u>was not</u> merely the money he had actually paid out of pocket, but also the fact that he been deprived of the full benefit of what he had been promised by the seller's tag: a rug worth over $5,000. *Furst*, 182 N.J. at 14-18, 860 A.2d at 441-443. The New Jersey Supreme Court specifically rejected the limited scope of the bargain which the defendant advanced,[4] which was the erroneous argument that the "bargain" is merely that the consumer will receive the item in exchange for the purported "sale" price listed on the tag. *Id*. Instead, the New Jersey Supreme Court held that **"[t]he 'expectation interest' of**

---

[4] This is the same erroneous argument which Defendant in the case at bar makes.

**the consumer who purchases merchandise at a discount is the benefit of the bargain."**
*Furst*, 182 N.J. at 14, 860 A.2d at 442.

     In reaching this holding, the New Jersey Supreme Court made various legal rulings and observations which are fundamental to the case at bar. As observed by the New Jersey Supreme Court, the seller's very purpose in listing a purported "regular" price on a tag is to create the impression in the consumer's mind that the object has an objective worth and value higher than its current purported "sale" price; to make consumers believe they are getting merchandise worth the claimed "regular" price, while only paying the lower "sale" price. *See Furst*, 182 N.J. at 17-18, 860 A.2d at 444-445:

> "In deciding that the regular price on the Ireloom carpet sales sticker is evidence of replacement value, we look to the reality of the marketplace and the role that advertising plays in inducing consumers to purchase products. Merchants understand that one of the central tenets of market psychology is that consumers do not want to pay full retail price and are always in search of the best deal. As commentators have noted, **'[t]he use of an advertised reference price with an advertised sale price focuses consumers' attention on the difference between the two prices. This leads to a perception of greater value concerning the purchase of the product.' ...Merchants draw consumers into their stores by holding sales events—such as warehouse clearance days—that promise the regular value of a product at a reduced price....Sales stickers with slashed prices play to the consumers' commonsense desire to buy at a reduced price rather than the regular price."** (emphasis added)

     As the New Jersey Supreme Court made clear, such tactics are fine, but only so long as the seller does not falsely inflate the supposed "regular" price of the item. *See Furst*, 182 N.J. at 18, 860 A.2d at 445:

> **"Merchants commit no wrong by profiting from consumers' craving to shop smartly, provided they do not place the value of the products they sell in a false light. N.J.A.C. 13:45A-9.2(a)(9) (making unlawful 'false or misleading representations of facts concerning . . . amounts of price reductions')."** (emphasis added)

     The New Jersey Supreme Court in *Furst* went on to hold that, because of regulations like N.J.A.C. 13:45A-9.2(a)(9), New Jersey law will treat the seller's act in listing a purported

9

"regular" price of an item on a sales tag as a representation by the seller that the item's true objective worth and value is such that it could command that purported "regular" price in the market place. *See Furst*, 182 N.J. at 16-18, 860 A.2d at 443-444:

> **"We begin by ascribing to the term 'regular price' its customary commercial meaning. What defendants have denominated as the regular price on the sales tag is referred to as the 'former' price under federal and state regulations.** *A product's former (or regular) price is the price at which the merchant has 'openly and actively' tendered the product for sale, 'for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith*—**and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.'… The point of both the federal and state regulations is that** *the regular price must bear some relationship to what the retailer considered to be the market value of the merchandise 'in the recent, regular course of his business.'*…**The consumer, surely, would not think that he is getting a bargain if the product he purchases is worth no more than the price he paid." (emphasis added)**

The New Jersey Supreme Court in *Furst* went on to hold that, under New Jersey law, the price at which an item is regularly sold in the market place in the ordinary course of business is strong evidence of the item's objective value and worth. *Furst*, 182 N.J. at 16-18, 860 A.2d at 443-444. Because of this, *Furst* held that a seller's statement of the purported "regular" price of an item on a sales tag was *prima facie* evidence of the value of the benefit which the consumer reasonably expected to receive under the promised bargain. In short, the New Jersey Supreme Court held that if a seller stated that the item's regular price was a certain amount, the customer had every right to expect to receive an item who objective worth was equal to that purported former price. *See Furst*, 182 N.J. at 18-19, 860 A.2d at 445:

> **"The strong remedial policy undergirding the Consumer Fraud Act leads us to conclude that** *the regular price advertised on the sales sticker is a relevant benchmark from which to impute replacement value.*" **(emphasis added)**

The New Jersey Supreme Court's holding in Furst was based, *inter alia*, on N.J.A.C. 13:45A-9.6, which makes clear that, when a seller advertises a fake and inflated former price for a product, the seller has deprived the consumer of the "bargain" promised under New Jersey law.

10

*See* N.J.A.C. 13:45A-9.6(d):

> **"The following examples of fictitious pricing are provided for illustration only and are not intended to limit the types of advertising the Division shall consider to be fictitious:**
>
> **1.  John Doe is a retailer of Brand X fountain pens which cost him $ 5.00 each. His usual markup is 50 percent over cost. That is, his regular retail price is $ 7.50. In order subsequently to offer an unusual 'bargain,' Doe temporarily raises the price of Brand X pens to $ 10.00 each. In so doing, Doe realizes that he will only be able to sell a few pens, if any, at this inflated price. But he does not care, because he intends to maintain that price for only a few days. Then he 'cuts' the artificially inflated price of $ 10.00 to the usual price—$ 7.50 at which time he advertises: 'Terrific Bargain: X Pens, Were $ 10, Now Only $ 7.50.'** *This is obviously a false claim. The advertised 'bargain' is not genuine.***" (emphasis added)**

Since *Furst*, both New Jersey federal and state courts have not hesitated to hold that when a seller delivers less than what was promised, that is an ascertainable loss under the NJ CFA, regardless of whether the product is defective or not.[5] *See e.g. Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011):

> **"According to Defendants, using a misrepresentation to cause a consumer to purchase a product does not cause an ascertainable loss….As explained below,** *Defendants are incorrect. Misrepresenting a product in order to get a consumer to purchase it does cause an injury…* **The New Jersey Supreme Court has repeatedly and explicitly endorsed a benefit-of-the-bargain theory under the Consumer Fraud Act that requires nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised…. Although it is often the case that the difference between the promised product and the product actually received is some defect or flaw in the product,** *there is no requirement that the product actually received be defective or deficient in any way* **other than that it is not what was promised." (emphasis added) (citations omitted)**

In *Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040, at *18-*20 (D.N.J. Dec. 7, 2016) (Exhibit A), the District of New Jersey correctly applied the

---

[5] Defendant's attempt to "import" a requirement into New Jersey law that the product must be "defective" in order to prove a loss is particularly galling given that in published opinions such as *Smajlaj*, the District of New Jersey has made clear there is no such requirement under the NJ CFA. *See also Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040, at *18 (D.N.J. Dec. 7, 2016) (holding as to a loss under the NJ CFA: **"[T]here is no requirement that the product actually be defective or deficient in any way other than that it is not what was promised."**) (emphasis added).

11

principles discussed in *Furst* in a situation very similar to the case at bar. Specifically, the

District of New Jersey in *Cannon* denied a motion to dismiss a New Jersey Consumer Fraud Act

claim which arose from the use of false and inflated "original" prices listed for bottles of wine,

and the illusory purported "discounts" based on those inflated former prices (*i.e.*, the same

factual predicate as the case at bar). *See Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD),

2016 U.S. Dist. LEXIS 169040, at *18-*20 (D.N.J. Dec. 7, 2016) (Exhibit A), rejecting the exact

argument made by Defendant here, holding:

> **"Defendants contend that, because 'Plaintiffs did in fact receive the exact merchandise that they bargained and paid for, and have not alleged that the bottles of wine they received were 'less than what was promised,' . . . Plaintiffs argue that, at this juncture, under the benefit-of-the-bargain theory, they are required to plead simply that they 'received something less than or different from what they reasonably expected in view of defendant's presentations,' and that they have done so. Plaintiffs contend that they 'have alleged a loss that can be quantified: the difference between the promised value of the wine and the actual value of the wine.' *The Court agrees. Under the benefit-of-the-bargain theory, Plaintiffs are required to show 'nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised.'"* (emphasis added) (citations omitted)**

In *Cannon*, the District of New Jersey relied on factual allegations in the complaint that

the objective value and worth of the wine bottles purchased was lower than the fake and inflated

purported former prices listed by the defendant. *See e.g. Cannon v. Ashburn Corp.*, No. 16-1452

(RMB/AMD), 2016 U.S. Dist. LEXIS 169040, at *19 (D.N.J. Dec. 7, 2016) (Exhibit A hereto)

(where the District of New Jersey noted that while **"Plaintiffs have alleged that they were**

**offered a $35 bottle of 2013 Castlebank Vineyards Vivian's Vineyard Dry Creek Valley**

**Cabernet Sauvignon for the price of $13.99"**, the complaint alleged that those consumers were

deprived of that bargain because the bottle was actually only worth the purported sale price of

$13.99).  As noted by the District of New Jersey: **"Plaintiffs have alleged that the bottles they**

**received were of lesser value than the bottles advertised and, therefore, that they did not**

receive the value of the wine promised." *Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/ AMD), 2016 U.S. Dist. LEXIS 169040, at *20 (D.N.J. Dec. 7, 2016) (Exhibit A hereto).

The Complaint in the case at bar makes the same type of factual allegations which the District of New Jersey in *Cannon* relied upon: that Defendant's use of false and inflated purported "reference" prices amounted to a false and inflated representation by Defendant as to the items' objective value and worth in the marketplace. *See e.g.* Complaint at Paragraph 173: **"By stating that the reference prices of the items purchased by Plaintiff were higher than the prices at which the items were typically sold or offered for sale, Defendant promised a bargain to Plaintiff in which he would receive items worth the reference prices claimed on Defendant's tags... In actuality, however, *the true value of the items purchased by Plaintiff was less than the false and inflated reference prices listed on their tags...*"** (emphasis added); Complaint at Paragraph 174: **"Defendant affixed a price tag to the Van Heusen women's red and black plaid crewneck shirt purchased by Plaintiff, item number 011528026199, representing that the former price (and value) of the shirt was '68.00,'... thus representing that Plaintiff was getting a shirt worth '68.00' for just $27.20... In reality, *those statements of value* and savings *were grossly inflated by Defendant.* Plaintiff did not receive the benefit of Defendant's promise that he would be receiving a shirt worth $68.00... The shirt was not typically offered for sale in New Jersey, or sold in substantial amounts or for a substantial period of time, by anyone for a price as high as $68.00, *and the shirt was worth less than $68.00"*** (emphasis added). *See also* Complaint at Paragraphs 18, 53, 93, 103 and 175 (each containing similar factual allegations regarding various items purchased by Plaintiff).

Moreover, as was the case in *Cannon*, the Complaint makes repeated allegations that Defendant's purported "sale" prices listed on Defendant's signs were actually the same prices at

13

which these items are typically and regularly sold by Defendant and others in the marketplace. *See e.g.* Complaint at Paragraph 12: **"In actuality, each item in Defendant's Van Heusen Company Stores in New Jersey that bears a higher reference price on its tag is not being discounted by Defendant, and *the lower, purportedly-discounted sale price is – or is very close to – the true, every-day, regular price at which the item is typically sold by Defendant and other retailers in New Jersey.*"** (emphasis added); Complaint at Paragraph 70: **"Thus, the items offered for sale in Defendant's Van Heusen Company Stores that have been assigned and display both a higher reference price and a lower, purportedly-discounted sale price or promised percentage-off discount are not actually being discounted by Defendant; instead, *the lower, actual sale price is (or is very close to) the true, every-day, regular price at which the items are typically sold*.**" (emphasis added); Complaint at Paragraph 88: **"In reality, the price that Plaintiff paid for the shirt was effectively the same price at which Defendant customarily and regularly sold the shirt…"**. *See also* Complaint at Paragraphs 99 and 110.

Thus, there is nothing subjective about Plaintiff's claims of loss. Under *Furst* and *Cannon*, allegations of the type quoted above clearly state a viable claim of an ascertainable loss under the NJ CFA, by making clear that the actual objective worth and value of the items purchased was lower than what Defendant represented. *Furst* was a unanimous, published and precedential opinion of the New Jersey Supreme Court. Thus, *Furst* represents the highest authority on New Jersey law. The unpublished and non-precedential *Hoffman* opinion[6] relied upon in Defendant's brief cannot overrule the New Jersey Supreme Court holdings in *Furst*.

---

[6] New Jersey Court Rule 1:36-3 provides **"No unpublished opinion shall constitute precedent or be binding upon any court."**

14

Defendant's reliance on *Shaulis v. Nordstrum*, 9865 F.3d 1 (1st Cir. 2017), *Kim v. Carter*, 598 F.3d (7th Cir. 2010), *Gerboc v. ContextLogic*, 867 F.3d 675 (6th Cir. 2017) and *Belcastro v. Burberry*, 2017 WL 5991782 at 1 (S.D.N.Y., Dec 1, 2017) is equally misplaced. None of these cases involve New Jersey law, let alone claims under the NJ CFA. Rather, all of these cases involve different consumer protection statutes of other states and the law of states other than New Jersey. Such cases have nothing to do with whether or not Plaintiff has pleaded a claim under New Jersey law.

Furthermore, none of the cases relied upon by Defendant,[7] including the *Hoffman* case, involve factual allegations in the complaint that the actual objective value and worth of the item the consumer received was lower than what the defendant represented. Thus, in addition to being contrary to the binding precedent established by the New Jersey Supreme Court holding in *Furst*, the cases cited by Defendant are factually distinguishable.  As *Furst* and *Cannon* make clear, when a seller promises goods of a certain specified value, quality and worth and then delivers goods which have less value, quality and worth than what was represented, the buyer has been deprived of the full benefit of his bargain under New Jersey law. That is what Plaintiff alleges here.

---

[7] For example, Defendant's own brief indicates why Defendant's reliance on *Waldron v. Jos. A. Bank Clothiers*, 2013 WL 12131719, at *4 (D.N.J. Jan. 28, 2013) is misplaced, since Defendant's brief itself points out that the *Waldron* plaintiff failed to plead **"that they did not receive the value that was promised."** *See* Defendant's Brief at Page 12. In the case at bar, Plaintiff's Complaint very clearly <u>does</u> allege that the items he received had an actual objective value and worth which was lower than what Defendant represented and promised on its tags (*i.e.*, that the items he received were less valuable than promised). *See* Complaint at Paragraphs 12, 70, 88, and 173-175.  *See also Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD), 2016 U.S. Dist. LEXIS 169040, at *20 n.5 (D.N.J. Dec. 7, 2016) (distinguishing *Waldron* on the basis that the *Waldron* plaintiff did not properly allege the objective value and worth of the good received was less than what was promised).

## 2. **Plaintiff Has Also Pleaded an Ascertainable Loss Under the Out of Pocket Loss Method**

Plaintiff has also pleaded a viable ascertainable loss under the NJ CFA using the "out-of-pocket loss" method.  Under this method, a plaintiff suffers an ascertainable loss within the meaning of the NJ CFA when a false statement by the seller causes them to pay money to the seller which they would not otherwise have paid. *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 528, 4 A.3d 561, 580 (2010) (holding that the purchase price of a product constitutes an out-of-pocket loss under the NJ CFA). In *Dicuio v. Brother Int'l Corp.*, No. 11-1447 (FLW), 2012 U.S. Dist. LEXIS 112047, at *24 (D.N.J. Aug. 9, 2012) (Exhibit B hereto), the District of New Jersey held that an out-of-pocket loss occurs under the NJ CFA when a plaintiff pleads he would not have purchased the product but for the Defendant's allegedly false statement, with the federal court stating:

> **"I concluded that a purchaser of a dietary supplement misled by the seller's statement that  the supplement had been 'certified by science' sufficiently pled ascertainable loss under the NJCFA by asserting that he paid the purchase price for the product and that he 'would not have purchased' the product but for the Defendant's allegedly false statement." (emphasis added)**

Applying these same principles to a "fake" sale case highly similar to the case at bar, a federal court in California held in 2017 that a New Jersey plaintiff whose complaint pleaded that she paid $107.95 **"in reliance on the false statements made by Defendants, and that she would not have paid Defendants any money but for those false statements"** had stated a viable ascertainable loss under the New Jersey Consumer Fraud Act under the "out-of-pocket loss" method. *See Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1201 (N.D. Cal. 2017), holding: **"Brother supports Plaintiff's proposition that an out-of-pocket loss can occur even where a plaintiff is misled into purchasing something of value."** Here, the Complaint makes the same type of allegations as in *Munning*. *See* Complaint at Paragraph 176: **"Plaintiff suffered an out**

of pocket loss of money in that he was induced to pay Defendant money based on the misleading and deceptive statements of Defendant.  *But for those misleading and deceptive statements, Plaintiff would not have paid any money to Defendant.*" (emphasis added).[8]

### B. Plaintiff Has Properly Alleged a Causal Connection Between the Loss and the Unlawful Act

As stated by the New Jersey Supreme Court in *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 528, 4 A.3d 561, 580 (N.J. 2010): **"It bears repeating that the [NJ CFA] does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss."**  Plaintiff has very clearly alleged such a connection in this case. *See* Complaint at Paragraph 176: **"But for those misleading and deceptive statements, Plaintiff would not have paid any money to Defendant."** As such, a causal connection between the unlawful act and the alleged loss has clearly been pleaded. *See e.g. Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1201-02 (N.D. Cal. 2017), upholding a New Jersey Consumer Fraud Act claim based on the use of fake and inflated former prices and illusory "discounts" holding:

> **"the NJCFA requires a causal relationship between the defendant's unlawful conduct and plaintiff's ascertainable loss. Here, Plaintiff asserts she 'would not have made any purchase from Defendants' website at all on the day in question but for the false promise by Defendants that she was receiving discounted merchandise . . .' FAC ¶ 159. Thus, this element is satisfied."** (emphasis added)

---

[8] The rulings under New Jersey law in both *Munning* and *Dicuio* are consistent with the statement of California law in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), as amended on denial of reh'g and reh'g en banc (July 8, 2013):

> **"[W]e hold that when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under [California's Unfair Competition Law and Fair Advertising Law] because he has suffered an economic injury."**

The 9th Circuit also held that "price matters" and misrepresentations about a product's regular price through fake sales it just as important to consumers as any misrepresentation about other characteristics of a product. *Hinojos*, 718 F.3 at 1106.

## II.    DEFENDANT'S TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT ARGUMENT IS WITHOUT MERIT

The New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, *et seq*. ("TCCWNA") provides a private New Jersey statutory cause of action for any instance where a seller of goods or services **"offers"** or **"displays"** a **"notice"** or **"sign"** to consumers which violates rights created by any other state or federal statute or regulation. *See* N.J.S.A. § 56:12-15. Defendant's sole argument regarding the TCCWNA appears to be that Plaintiff suffered no damages as a result of this conduct. Defendant's argument fails for a number of reasons.

For the reasons spelled out in Section I, Plaintiff <u>did</u> suffer a loss under New Jersey law. More importantly, there is no "ascertainable loss" requirement under TCCWNA because TCCWNA does not require any monetary damages. *See Spade v. Select Comfort Corp.*, 232 N.J. 504, 523, 181 A.3d 969, 980 (2018) (holding that a consumer may be awarded a $100 per person civil penalty, even without suffering actual money damages, stating: **"TCCWNA thus contemplates that a consumer may be entitled to a remedy notwithstanding the absence of proof of monetary damages"**). In *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1201-02 (N.D. Cal. 2017), a federal court upheld a New Jersey TCCWNA claim based on the use of fake and inflated former prices and illusory "discounts." Here, Plaintiff was harmed because he was subjected to the very conduct which N.J.A.C. 13:45A-9.6 bars and because that violation induced him to spend money he otherwise would not have spent.

## III.    PLAINTIFF'S COMPLAINT PLEADS PLAUSIBLE ALLEGATIONS THAT THE FORMER PRICES LISTED ON DEFENDANT'S TAGS WERE FALSE AND INFLATED, AND DOES SO IN MORE THAN ENOUGH DETAIL TO PUT DEFENDANT ON NOTICE OF THE MISCONDUCT OF WHICH IT IS ACCUSED

Defendant argues that Plaintiff's highly-detailed 45 page Complaint – a fact-laden

pleading which is nearly twice the length of this brief – fails to satisfy Rule 9 and/or *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).[9] This defense argument is clearly without merit, as even a cursory examination of the Complaint is sufficient to establish. Indeed, Defendant's argument is so obviously inapplicable to the Complaint filed that one is forced to wonder if Defendant simply "cut and pasted" this defense argument from some other brief in another case.[10]

A plaintiff is not required to plead all the evidence on which he will rely, or to do some kind of summary judgment style presentation proving his claims on the merits, merely to survive a motion to dismiss. *See Arista Records, LLC v. Doe*, 604 F.3d 110, 121-122 (2nd Cir. 2010) (**"we reject Doe 3's contention that** *Twombly* **and** *Iqbal* **require the pleading of specific evidence or extra facts beyond what is needed to make a claim plausible"**). *See Koppel v. 4987 Corp.*, 167 F.3d 125 (2nd Cir. 1999) (**"A plaintiff, of course, need only** <u>**allege**</u>**, not** <u>**prove**</u>**, sufficient facts to survive a motion to dismiss."**) (emphasis in original).

---

[9] In addition to being wrong, Defendant's argument is more than a little ironic given that New Jersey law puts the burden on the *seller* to prove that claimed former/reference prices for merchandise represents actual prices at which the item has been sold in the marketplace in the ordinary course of business. *See* N.J.A.C. § 13:45A-9.3(a)(3) (**"An advertiser offering a price reduction on merchandise at a price of less than $ 100.00 shall…(3) Comply with the provisions of N.J.A.C. 13:45A-9.4 if the advertisement makes reference to a former price…"**; N.J.A.C. § 13:45A-9.4(a)(5) (providing an advertiser must **"Set forth the basis upon which the former price or price range or the amount of reduction in dollars was established in close proximity to the former price or price range of the advertised item."**); and N.J.A.C. § 13:45A-9.4(a)(6) (providing an advertiser must **"Set forth with specificity when in the remote past a former price of an item of merchandise was effective if it was not actively or openly offered for sale within the advertiser's trade area in the regular course of business during at least 28 of the 90 days before the effective date of the advertisement."**).

[10] Indeed, in a prior class action against Defendant PVH in California, which alleged the same type of "fake" former price scheme in the sale of Van Heusen merchandise, Defendant PVH made the same arguments, even using a title that is remarkably similar to the title of its argument in the case at bar. *See* Exhibit E, Defendant PVH's brief in support of motion to dismiss under Rule 12(b)(2) in *Ramos v. PVH Corporation*, United States District Court, Eastern District of California, Case No. 2:16-CV-02258-JAM-KJN, at numbered pages 7-10, entitled **"The [Amended Complaint] Does Not Adequately Plead That PVH's Advertising is False"**. The *Ramos* case later settled as a class action.

*Twombly* requires only enough factual detail to satisfy the **"facial plausibility"** standard, which is defined as having enough facts to support an inference of liability. *See Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2nd Cir. 2009). **"[T]he plaintiff must allege sufficient facts to show 'more than a sheer possibility that a defendant acted unlawfully.'"** *IHS Dialysis v. Davita, Inc.*, 2013 U.S. Dist. LEXIS 47532, at *4 (S.D.N.Y. Mar. 31, 2013) (Judge Ramos). **"However, the 'flexible plausibility standard' is not a heightened pleading standard, and 'a complaint does not need detailed factual allegations' to survive a motion to dismiss.'"** *IHS Dialysis v. Davita, Inc.*, 2013 U.S. Dist. LEXIS 47532, at *4 (S.D.N.Y. Mar. 31, 2013) (Judge Ramos) (citations omitted).

**"The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based."** *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). As long as the description of the scheme provides such notice, a plaintiff need not plead every detail. *See e.g. Pullman v. Alpha Media Publ. Inc.*, 2013 U.S. Dist. Lexis 50697 (S.D.N.Y. 2013):

> **"The underlying rationale behind Rule 9(b), however, is to put defendants on notice of the precise misconduct alleged so that they can properly defend themselves against potentially spurious charges affecting their reputations…. This means that every element of the who, what, where, why and when of the fraud does not need to be pled with utmost detail so long as the scheme of fraud itself is specifically and particularly pled." (emphasis added)**

*See also Gelles v. TDA Indus., Inc.*, No. 90 Civ. 5133 (MBM), 1991 U.S. Dist. LEXIS 3135, at *16-17 (S.D.N.Y. Mar. 18, 1991):

> **"Rule 9(b) does not require that a complaint plead fraud with the detail of a desk calendar or a street map. Nor should the word 'particularity' be used as a talisman to dismiss any but a   finely detailed fraud allegation brought in a federal court." (emphasis added)**

*See also Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y. 2015):

> **"To satisfy Rule 9(b), a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based."**

This is especially true where – as here – a scheme operated over a period of time. In such a case, a complaint need not recite the specific facts of every instance where the scheme has been used, as Defendant in the case at bar demands. *See United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 617 (S.D.N.Y. 2013) (**"where a fraudulent scheme is pleaded with sufficient particularity to 'give [the defendant] fair notice of the claim asserted,' the pleading of 'a few examples' of the allegedly false or fraudulent claims submitted as a result of that scheme is sufficient"**); *Carey v. Berisford Metals Corp.*, No. 90 Civ. 1045 (JMC), 1991 U.S. Dist. LEXIS 3776, at *13 (S.D.N.Y. Mar. 28, 1991) (**"Where 'the fraud allegedly involved a course of conduct over an extended period of time or a series of transactions, it is not necessary to recite in detail, the facts of each transaction of the fraudulent scheme.'"**).

The Complaint provides more than enough facts and detail to satisfy Rule 9 and *Twombly*, by meeting the "flexible plausibility standard" and putting Defendant on notice of the conduct of which it being accused, including the "who, what, when, where, and how" of the misleading conduct charged, a detailed explanation of what is false or misleading about Defendant's statements, and why they are false. Indeed, the complaint provides a host of facts relating to every facet of the scheme alleged: including 1) the exact manner in which Defendant's "fake" price scheme operated (Complaint at Paragraphs 2-13, 33, 49-62 and 64-72); 2) a very long and detailed description of each of the deceptive statements made to Plaintiff (including verbatim quotes) and a thorough factual explanation as to why each such statement was false (Complaint at Paragraphs 73-112); 3) the exact dates of purchase (Complaint at Paragraphs 17 and 74); 4) the items purchased by Plaintiff and the exact prices paid (Complaint at Paragraphs 78-80, 89-91, and 100-102); 5) the address of the store where the purchases

occurred (Complaint at Paragraphs 17 and 74); 6) how and why the written statements on Defendant's tags were misleading (Complaint at Paragraphs 2-13, 49-62, 64-72 and 74-112); 7) how those fake comparison prices were created and who created them (Complaint at Paragraphs 22, 68, 85, 96 and 107); and 8) the fact that the scheme operated over time according to a set of uniform policies (Complaint at Paragraphs 2, 10, 114-115, and 159-160).

Plaintiff's complaint then proceeds to go well beyond what is required by Rule 9 or *Twombly* by actually attaching exhibits and evidence to the Complaint. This includes copies of the tags from the items purchased by Plaintiff (which contain the actual false and misleading statements) and pictures of the items themselves (Exhibits A-C to the Complaint), pictures of the signs described in the Complaint (Exhibit D to the Complaint), and copies of the receipts from the purchase of these items (Exhibit E to the Complaint). The Complaint also sets forth ample facts which demonstrate that there is an adequate basis of knowledge for Plaintiff's allegations regarding Defendant's fake and inflated price scheme. Indeed, though not required by any case, Plaintiff's Complaint pleads a summary of the extensive pre-suit investigation conducted by Plaintiff's counsel, which included store visits, tracking of prices by various means, and the establishment of a computer data base that collected and stored thousands of data points relating to the prices charged by Defendant and other retailers who sell Defendant's merchandise over time. *See* Complaint at Paragraphs 49-50.

It is clear that no amount of detail will ever satisfy Defendant. The facts and level of detail contained in Plaintiff's Complaint, however, are more than sufficient to satisfy the applicable standards.

IV.   **DEFENDANT'S STATUTE OF LIMITATIONS ARGUMENT IS WITHOUT MERIT AND ALSO IMPROPERLY SEEKS TO MAKE A PREEMPTIVE STRIKE ON CLASS CERTIFICATION ISSUES**

Importantly, Defendant <u>does not</u> assert that <u>Plaintiff's</u> claims are in any way untimely. Rather, it is undisputed that Plaintiff's purchases took place in 2019 (Complaint at Paragraph 18); well within the applicable six year statute of limitations. Instead, Defendant erroneously argues that the proposed class definition pleaded in the *DiCicco* Complaint – which runs from June 18, 2013 to the present – goes back six months too far, because Plaintiff DiCicco's Complaint was filed on December 3, 2019. Defendant's attack on the proposed class definition pleaded fails for several reasons.

First, it is well-established in the Southern District of New York that attacks on class certification issues on a motion to dismiss are premature and inappropriate. *See Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504, 2011 U.S. Dist. LEXIS 48199, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (**"district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage"**); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (**"motions to strike class allegations are often denied as premature."**). When Plaintiff makes a class certification motion, the parties will fully brief all issues relating to certification, including the appropriate class definition and class period. The Court will decide at that time whether to certify a class, the class definition and class period.

Second, Defendant overlooks the fact that, prior to the filing of the *DiCicco* Complaint, another proposed class action complaint was filed in the matter of *Tripicchio v. PVH Corporation*, United States District Court, Southern District of New York, Docket No. 1:19-cv-05729-ER. The *Tripicchio* class complaint was filed on June 18, 2019 and raised claims that are

identical to those in the case at bar, on behalf of a proposed class whose composition is identical to the proposed class definition in the case at bar, with a proposed class period running from June 18, 2013 to the present. Under well-established principles of tolling in proposed class actions, the statute of limitations on all persons falling within the proposed *Tripicchio* proposed class were tolled from when the *Tripicchio* complaint was filed on June 18, 2019 until the *DiCicco* Complaint was filed on December 3, 2019. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 540, (1974); *Ca. Pub. Emples. Ret. Sys. v. Caboto-Gruppo Intesa BCI (In re WorldCom Sec. Litig.)*, 496 F.3d 245, 256 (2d Cir. 2007) (filing of proposed class action complaint tolled statute for all proposed class members). Thus, it is perfectly appropriate and correct for the proposed class definition in the *DiCicco* case to include class claims going back to June 18, 2013.

## V.   PLAINTIFF HAS PLEADED A VIABLE CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING UNDER NEW JERSEY LAW

Defendant's sole argument with regard to the breach of implied covenant of good faith and fair dealing has to do with when the contract was formed. According to Defendant, the misconduct alleged all took place before a contract was formed. Also according to Defendant, New Jersey law requires the improper conduct to occur after contract formation. Defendant's argument fails as both a matter of law and fact.

First, Defendant is wrong about New Jersey law. In actuality, no published or unpublished New Jersey state court opinion has ever held – or even stated – that the misconduct must occur after contract formation (as opposed to during contract formation). The only case which ever stated anything similar is one unreported and non-precedential federal district opinion cited by Defendant: *Galicki v. New Jersey*, 2016 WL 4950995, at *30 (D.N.J. 2016). Yet *Galicki* does not cite any authority whatsoever for this assertion. Nor has any other court – state or

24

federal – followed the ruling of *Galicki* on this point. Indeed, other opinions of the District of New Jersey have upheld a claim for a violation of the implied covenant of good faith and fair dealing where false or misleading representations were made by a seller regarding consumer products prior to and at the time of purchase. *See e.g. Payne v. Fujifilm U.S.A., Inc.*, No. 07-cv-385, 2007 U.S. Dist. LEXIS 94765, *35 (D.N.J. Dec. 28, 2007) (upholding claim for breach of implied covenant of good faith and fair dealing under New Jersey law where seller **"misrepresented the character and quality"** of the goods being sold).

Second, the factual premise of Defendant's flawed legal argument is also wrong. Plaintiff's Complaint actually <u>does</u> assert that, after payment had been made and a contract had already been formed, Defendant continued to try to mislead Plaintiff by continuing to make false representations regarding the worth and value of the goods purchased. For example, Paragraph 64 of the Complaint describes how, after payment had already been made, Defendant provided Plaintiff with a written receipt containing a misleading statement about Plaintiff's purported **"TOTAL SAVINGS"**, a false statement designed to help hide the fact that Defendant had previously overstated the value of the goods. Thus, Defendant is alleged to have committed misleading and unethical acts both before <u>and after</u> purchase.

## Conclusion

For the foregoing reasons, Defendant's motion should be denied in its entirety.

DeNITTIS OSEFCHEN PRINCE, P.C.

By:

Ross H. Schmierer, Esq. (RS 7215)
315 Madison Avenue, 3rd Floor
New York, New York 10017
(T): (646) 979-3642
rschmierer@denittislaw.com
*Attorneys for Plaintiff*

Dated:  February 7, 2020