**PROSKAUER ROSE LLP**
Lawrence I. Weinstein
Jeffrey H. Warshafsky
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT DICICCO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PVH CORPORATION<br><br>Defendant. | Civil Action No. 1:19-cv-11092-ER<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE INJURY ............................... 2

        A.  Plaintiff Did Not Suffer an Ascertainable Loss under the CFA ................................... 2

        B.  Plaintiff Did Not Suffer the Requisite Injury for a TCCWNA or Breach of Implied Covenant Claim ................................................................................................... 7

    II.   THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT PVH VIOLATED NEW JERSEY'S PRICING REGULATION ............................................ 8

    III.  THE COMPLAINT'S PROPOSED CLASS PERIOD IS PARTIALLY BARRED ................................................................................................................... 10

CONCLUSION ................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Barrett v. Forest Labs.*,
   39 F. Supp. 3d 407 (S.D.N.Y. 2014)..................................................................................10

*Belcastro v. Burberry*,
   2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017) .......................................................................4

*Cannon v. Ashburn*,
   2016 WL 7130913 (D.N.J. Dec. 7, 2016) .........................................................................5, 6

*DaCorta v. AM Retail Grp.*,
   2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ........................................................................4

*Dicuio v. Brother Int'l*,
   2012 U.S. Dist. LEXIS 112047 (D.N.J. Aug. 9, 2012)........................................................6

*Furst v. Einstein Moomjy*,
   860 A.2d 435 (N.J. 2004)..................................................................................................4, 5

*Gerboc v. ContextLogic*,
   867 F.3d 675 (6th Cir. 2017) ...............................................................................................4

*Green v. Green Mt. Coffee Roasters*,
   279 F.R.D. 275 (D.N.J. 2011)..............................................................................................7

*Hinojos v. Kohl's*,
   718 F.3d 1098 (9th Cir. 2013) .............................................................................................6

*Hoffman v. Hampshire Labs*,
   963 A.2d 849 (N.J. Super. Ct. App. Div. 2009)...................................................................7

*Hoffman v. Macy's*,
   2011 WL 6585 (N.J. Super. Ct. App. Div. June 28, 2010), *cert. denied*, 6 A.3d
   441 (N.J. 2010) ....................................................................................................................3

*In re Estate of Fischer*,
   2011 WL 2314353 (N.J. Super. Ct. App. Div. June 14, 2011).............................................8

*Irvine v. Kate Spade*,
   2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017).....................................................................4

*Kao v. British Airways*,
   2018 WL 501609 (S.D.N.Y. Jan. 19, 2018) ........................................................................7

*Kim v. Carter's*,
    598 F.3d 362 (7th Cir. 2010) ...................................................................................................4

*Lee v. Carter-Reed*,
    4 A.3d 561 (N.J. 2010)............................................................................................................6

*Meridian Autonomous v. Coast Autonomous*,
    2018 WL 4759754 (S.D.N.Y. Sep. 30, 2018)..........................................................................7

*Munning v. Gap*,
    238 F. Supp. 3d 1195 (N.D. Cal. 2017) ..................................................................................6

*Shaulis v. Nordstrom*,
    865 F.3d 1 (1st Cir. 2017) .......................................................................................................4

*Smajlaj v. Campbell Soup*,
    782 F. Supp. 2d 84 (D.N.J. 2011) ...........................................................................................3

*Thiedemann v. Mercedes-Benz USA*,
    872 A.2d 783 (N.J. 2005).....................................................................................................2, 7

*Waldron v. Jos. A. Bank Clothiers*,
    2013 WL 12131719 (D.N.J. Jan. 28, 2013) .........................................................................3, 7

### OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) ........................................................................................................................2

Fed. R. Civ. P. 9(b) ........................................................................................................................9

N.J.A.C. § 13:45A-9.6 ................................................................................................................8, 9

## PRELIMINARY STATEMENT

Plaintiff DiCicco's Opposition does not explain away either of his Complaint's two fatal defects: (1) his alleged injury is not one New Jersey courts recognize as an "ascertainable loss," and (2) the scope of his counsel's investigation was too narrow to plausibly support the allegation that PVH violated the New Jersey pricing regulation on which each claim for relief depends.

The Complaint's sole theory of injury—that DiCicco did not get the discount he expected—cannot be shoehorned into either category of ascertainable loss that New Jersey courts recognize. Indeed, the Complaint's theory of injury has been rejected by New Jersey courts and many others as insufficient to support a consumer fraud claim. DiCicco's heavy reliance on *Furst v. Einstein Moomjy* is entirely misplaced. *Furst* was a defective product case in which the plaintiff did not allege false discount price advertising, and instead affirmatively relied on the advertised pre-discount reference price as a true and fair measure of the replacement value of the defective item. To the extent *Furst* is relevant, it supports PVH's position that DiCicco suffered no loss at all, much less an objective and ascertainable one. In addition, the Opposition wholly ignores, and thus is deemed to concede, PVH's dispositive argument that DiCicco's failure to return the shirts he bought (despite the Van Heusen store's prominently displayed, liberal return policy) renders his purported loss "purely hypothetical," and therefore not actionable under New Jersey law.

Further, the pricing regulation the Complaint alleges that PVH violated permits retailers to advertise a prior reference price as long as it was *either* the former price of the tagged item *or the former price of comparable items* sold by the retailer *or other retailers*. The Complaint does not allege any investigation to determine whether the tag prices of DiCicco's shirts were the same as for comparable shirts of other brands sold by other retailers. Thus, the investigation's stated scope is too narrow to support a *plausible* allegation that PVH violated New Jersey law.

1

**ARGUMENT**

I.  **THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE INJURY**

    A.    **Plaintiff Did Not Suffer an Ascertainable Loss under the CFA**

DiCicco signals the overall weakness of his ascertainable loss argument by starting it with the false premise that if PVH's alleged violation of New Jersey's pricing regulation is deemed not to have caused him an ascertainable loss, the regulation's prohibition on fictitious pricing "would be reduced to meaningless surplusage." Opp. 3 n.1. That is not true, as PVH previously explained. Mov. Br. 17. Unlike consumers, the New Jersey Attorney General may bring a CFA claim without any showing of ascertainable loss, and thus a powerful remedy does exist. Initially, the CFA "conferred enforcement power exclusively on the Attorney General." *Thiedemann v. Mercedes-Benz USA*, 872 A.2d 783, 791 (N.J. 2005). When New Jersey expanded the CFA to include a private right of action, the legislature added the ascertainable loss requirement expressly to serve as an "integral check" on consumer lawsuits. *Id.* at 794. Thus, although the CFA is construed liberally in determining whether conduct falls within its ambit, there is no wiggle room when it comes to the ascertainable loss requirement in suits by consumers, who must allege and prove an objective injury. Mov. Br. 9-10. Simply stated, the ascertainable loss requirement for consumers but not the Attorney General was a conscious legislative choice that DiCicco cannot wish away.

Next, the Opposition spends pages on the red-herring argument that DiCicco should not be obligated to plead the exact amount of his injury or proffer the evidence he will use to prove it. Opp. 5-7. PVH did not contend otherwise; instead, PVH asserted, correctly, that Fed. R. Civ. P. 8(a) requires DiCicco to plead the facts constituting his injury in sufficient detail as to plausibly show that the alleged injury fits within either of the ascertainable loss theories New Jersey courts recognize: "loss of the benefit of the bargain" and "out-of-pocket loss." Mov. Br. 9-11. As PVH previously showed, the Complaint's injury allegations fit neither theory.

To sufficiently plead an ascertainable loss under the benefit of the bargain theory, a plaintiff must allege he was misled into buying a product that is worth less than the product that was promised (Mov. Br. 10), which the Complaint does not assert. The Opposition erroneously argues (Opp. 11 n.5) that PVH is trying to import a "defect" requirement into this standard. While a defect is one way a product may be worth less than promised, another way is if the product is falsely held out as having some objective quality it actually lacks. *Smajlaj v. Campbell Soup,* 782 F. Supp. 2d 84, 99 (D.N.J. 2011) (cited at Opp. 11) was such a case. There, the court held that where soup was falsely advertised as having "25% less sodium" than regular soup, ascertainable loss was established by the difference in retail price between what plaintiffs paid for the advertised soup and the lesser price they would have paid for regular tomato soup without the lower sodium feature.

Here, by contrast, the Complaint does not allege that any objective aspect or quality of the shirts DiCicco bought was not as advertised. He paid a total of $56 for three Van Heusen shirts and his own Complaint alleges that this is their actual value. Compl. ¶ 12. Although the Complaint claims DiCicco did not get the discount he expected, his subjective disappointment is not a loss of benefit of the bargain, as two New Jersey courts have expressly held. *See Hoffman v. Macy's*, 2011 WL 6585, at *1 (N.J. Super. Ct. App. Div. June 28, 2010) (plaintiff received the benefit of the bargain when he paid $299.99 for a Nespresso machine and alleged that was its true value, despite Macy's having falsely advertised an MSRP of $499.99), *cert. denied*, 6 A.3d 441 (N.J. 2010); *Waldron v. Jos. A. Bank Clothiers*, 2013 WL 12131719, at *4 (D.N.J. Jan. 28, 2013) (dismissing CFA claim for alleged false discount apparel advertising because "Plaintiffs have not alleged that the product was defective nor that they did not receive what they were promised").

As PVH showed in its moving brief (at 12-14), those New Jersey decisions are in accord with decisions by courts in this District and by federal appellate courts holding that a failure to

3

receive a purported price discount is not a loss of the "benefit of the bargain." *See, e.g.*, *Shaulis v. Nordstrom*, 865 F.3d 1, 12 (1st Cir. 2017); *Gerboc v. ContextLogic*, 867 F.3d 675, 679-81 (6th Cir. 2017); *Kim v. Carter's*, 598 F.3d 362, 364 (7th Cir. 2010); *DaCorta v. AM Retail Grp.*, 2018 WL 557909, at *7-8 (S.D.N.Y. Jan. 23, 2018); *Belcastro v. Burberry*, 2017 WL 5991782, at *3-4 (S.D.N.Y. Dec. 1, 2017); *Irvine v. Kate Spade*, 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017).

In brushing these decisions aside because they did not "involve New Jersey law, let alone claims under the NJ CFA" (Opp. 15), Plaintiff misses their clear relevance. Like the CFA, the consumer protection laws at issue in the cited non-New Jersey cases adopt the loss of the benefit of the bargain theory, but require such an injury to be objective. These decisions persuasively explain that a consumer's disappointment in not getting an advertised discount is not an objective loss of the benefit of the bargain, and further elaborate that "[t]he flaw in [this] theory of injury— that the mere purchase of an item may constitute cognizable injury, regardless of the item's specific qualities—is that it merges the alleged deception with the injury." *Shaulis*, 865 F.3d at 11; *see also Belcastro*, 2017 WL 5991782, at *3 (rejecting the "'but-I-thought-I-got-a-bargain' theory" on the same grounds"); *DaCorta*, 2018 WL 557909, at *7-8 (citing *Shaulis* and *Kim* to explain why plaintiff did not properly plead injury under New York law). DiCicco fails to identify anything unique about the New Jersey CFA that would distinguish it from the consumer protection laws addressed in these cases.

The Opposition principally relies on *Furst v. Einstein Moomjy*, 860 A.2d 435 (N.J. 2004), despite that plaintiff there did not allege false discount price advertising. In *Furst*, the plaintiff went to defendant's store and selected and paid for a carpet tagged with a "regular price" of $5,775 and a "sale price" of $1,199. *Id.* at 439. Upon delivery, the plaintiff discovered the carpet he was sent was both damaged and smaller than what he had paid for, and asked defendant to replace it

4

with the carpet he ordered. Claiming the carpet plaintiff saw in the store had been mistakenly tagged with the wrong sale price, defendant offered to deliver a replacement only if plaintiff paid the difference between the (purportedly erroneous) sale price and the advertised regular price. *Id.*

*Furst* held that "when a merchant violates the [CFA] by delivering defective goods and then refusing to provide conforming goods, a customer's ascertainable loss is the replacement value of those goods." *Id.* at 440. As a result, plaintiff, who argued (contrary to DiCicco here) that the "regular price" of $5,775 was the *true* value of the carpet he contracted to buy, was entitled on remand to use that price as evidence of the carpet's replacement value. *Id.* But *Furst* did not hold that a consumer who fails to get the *discount* he expected—as opposed to the *product* he expected—suffers an ascertainable loss. If *Furst* stood for that proposition, then the *Hoffman* and *Waldron* decisions (*supra* at 3; Mov. Br. 11-12), which post-dated *Furst*, would both be wrongly decided. Yet the New Jersey Supreme Court declined certiorari in *Hoffman*.

In fact, *Furst* illustrates why DiCicco did *not* suffer an ascertainable loss. As *Furst* explained, a "merchant who promises to deliver a product at a particular price must, at the option of the consumer, either deliver the product or render its replacement value." 860 A.2d at 442. But here, DiCicco took home with him the exact shirts he saw and paid for, and he does not allege that the shirts were defective or otherwise different from what he thought he was buying in the store, or that he unsuccessfully sought to return them. Nor, in contrast to *Furst*, does DiCicco claim that the true market prices of the shirts he bought are greater than what he paid. On the contrary, DiCicco asserts that the shirts are "regularly" sold at the prices he paid. Compl. ¶ 12. Thus, DiCicco got exactly what he bargained for.[1]

---

[1] The other case DiCicco cites on loss of the benefit of the bargain is *Cannon v. Ashburn*, where plaintiffs alleged that defendant advertised fictional previous prices for bottles of wine sold on defendant's website at purported discount prices. *Cannon v. Ashburn*, 2016 WL 7130913, at *7 (D.N.J. Dec. 7, 2016). The Opposition conveniently omits the

Nor has DiCicco adequately alleged an "out-of-pocket" loss. Under New Jersey law, an "out-of-pocket loss" occurs when (1) the product the plaintiff bought is essentially worthless or (2) something about the product unexpectedly forces the plaintiff to spend additional money post-purchase. *See* Mov. Br. 10. Misapplying *Lee v. Carter-Reed*, 4 A.3d 561 (N.J. 2010), the Opposition claims that an out-of-pocket loss occurs whenever "a false statement by the seller causes [a plaintiff] to pay money to the seller which they would not otherwise have paid." Opp. 16. But in *Lee*, the plaintiff alleged that defendant falsely promised its product would reduce belly fat when it did not do so, rendering it "worthless" for its advertised use. 4 A.3d at 568, 580. In the other New Jersey case DiCicco cites, plaintiffs alleged that they were forced to spend additional money post-purchase to replace ink cartridges more frequently than defendant led them to expect. *Dicuio v. Brother Int'l*, 2012 U.S. Dist. LEXIS 112047, at *3 (D.N.J. Aug. 9, 2012). DiCicco's claimed injury does not fit into either the "worthless" or "additional post-purchase" expenditure buckets: he neither alleges that the shirts he bought were worthless (rather, the Complaint claims they are worth what he paid), nor that he was forced to spend more money out of pocket as a result of having bought the shirts. Thus, he did not suffer any "out-of-pocket loss."[2]

Finally, PVH's moving brief explained (at 14-15) that DiCicco did not suffer an ascertainable loss for the additional reason that he never sought a refund despite the Van Heusen store liberal return policy that is prominently displayed at checkout. In *Thiedemann*, the New

---

key distinguishing aspects of *Cannon*. First, the court expressly distinguished wine from clothing because "wine is unique in that purchasers rely on the original price" as an indicator of the bottle's market value. *Id.* at *8 n.5. Second, the *Cannon* complaint included allegations as to the "actual values of the wines in question," providing an objective basis to allege ascertainable loss. *Id.* Given *Cannon*'s unique facts and its narrow holding that the plaintiffs had alleged an ascertainable loss only "by a slim margin," *id.* at *9, it does not support DiCicco's position that he suffered an ascertainable loss, especially in light of the substantial contrary authority PVH cited in its moving brief and here.

[2] The other decisions DiCicco cites regarding "out-of-pocket" loss are *Munning v. Gap*, 238 F. Supp. 3d 1195 (N.D. Cal. 2017) and *Hinojos v. Kohl's*, 718 F.3d 1098 (9th Cir. 2013). PVH refers the Court to its moving brief's detailed explanations (which the Opposition simply ignored) of why *Munning* was wrongly decided (Mov. Br. 16) and why *Hinojos*, which involved California law that materially differs from New Jersey law, is inapposite. *See id.* at 17 n.9.

Jersey Supreme Court held that "defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate 'loss' that the CFA expressly requires for a private claim." 872 A.2d at 794. Lower courts in New Jersey have extended that reasoning to hold that a plaintiff's claimed loss is "purely hypothetical"—and thus not objective and ascertainable—where, as here, the plaintiff does not allege he was dissatisfied with the product and sought a refund. *See Hoffman v. Hampshire Labs*, 963 A.2d 849, 854 (N.J. Super. Ct. App. Div. 2009); *see also Waldron*, 2013 WL 12131719, at *4; *Green v. Green Mt. Coffee Roasters*, 279 F.R.D. 275, 281 (D.N.J. 2011). The Opposition wholly ignores this argument, so the Court should treat it as conceded. *See, e.g.*, *Meridian Autonomous v. Coast Autonomous*, 2018 WL 4759754, at *5 (S.D.N.Y. Sep. 30, 2018); *Kao v. British Airways*, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018).

### B. Plaintiff Did Not Suffer the Requisite Injury for a TCCWNA or Breach of Implied Covenant Claim

The Opposition contends "there is no 'ascertainable loss' requirement under TCCWNA." Opp. 18. But as PVH argued and the Opposition does not dispute, TCCWNA claims are available only to "aggrieved consumers" who "suffered adverse consequences as a result of the defendant's regulatory violation." Mov. Br. 18 n.10 (quoting *Spade v. Select Comfort*, 181 A.3d 969, 981 (N.J. 2018)). The Complaint's basis for alleging that DiCicco is an "aggrieved consumer" is that he "suffered an ascertainable loss under the CFA" under the theory addressed above. Compl. ¶ 185. But as discussed, DiCicco did not suffer any adverse consequences as a result of purchasing Van Heusen shirts—never mind an "ascertainable loss"—so he has no basis to claim that he is an "aggrieved consumer." Indeed, where a TCCWNA claim is explicitly premised on a CFA claim that fails as a matter of law, as here, the TCCWNA claim should be dismissed as well. *See* Mov. Br. 18 (citing *Grisafi v. Sony Elecs.*, 2019 WL 1930756, at *9 (D.N.J. Apr. 30, 2019)).

7

For the same reasons, the Complaint fails to plausibly allege an injury sufficient to state a claim for breach of the implied covenant of good faith and fair dealing. *See* Mov. Br. 18.[3]

## II.   THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT PVH VIOLATED NEW JERSEY'S PRICING REGULATION

On top of the Complaint's failure to plausibly allege the requisite injury, it also fails to plausibly allege that PVH violated any law in the first place. DiCicco's claims are premised upon PVH's purported violation of New Jersey's pricing regulation.[4] Nothing in New Jersey's regulation prohibits a retailer from offering discounts. Indeed, the regulation does not even prohibit a retailer from offering a perpetual discount at a particular store, provided that the reference price is not "fictitious," as the regulation defines that term.

Under the regulation, a reference price is considered bona fide (i.e., not fictitious) if it was either (1) the price at which a substantial number of sales of the item *or comparable merchandise* was sold in the retailer's trade area in the 60 days before or after the price was advertised, or (2) the price at which the item *or comparable merchandise* was offered for sale in the retailer's trade area for at least 28 of the most recent 90 days before the price was advertised. N.J.A.C. § 13:45A-9.6. Mirroring the regulation, the Complaint alleges that DiCicco believed the Van Heusen reference prices he observed were comparison or former prices for the items *or for similar items* sold by PVH *or other retailers*. Compl. ¶ 4. Thus, for the Complaint to survive this motion, it

---

[3] DiCicco's implied covenant claim fails for the additional reason that all of PVH's alleged wrongful conduct took place prior to or at the time of DiCicco's purchases, not during any post-contract period of performance. *See* Mov. Br. 23; *see also In re Estate of Fischer*, 2011 WL 2314353, at *4 (N.J. Super. Ct. App. Div. June 14, 2011) ("The covenant of good faith and fair dealing focuses on the performance and enforcement of a valid agreement more than it regulates contract formation"). DiCicco's contract with PVH was the payment of $56 in exchange for three Van Heusen shirts, after which PVH's only remaining obligation was to accept a return if DiCicco sought one, which he did not. The only supposed post-contract breach that DiCicco identifies is that PVH gave him a receipt reflecting purportedly inflated savings (Opp. 25), but that took place at the time the contract was formed, not afterwards.

[4] Although the Complaint quotes from the FTC's regulations, PVH explained in its moving brief that there is no private right of action under the FTC Act. Mov. Br. 20 n.12. The Opposition does not contest this. Nor does it dispute that, as PVH also argued, the FTC regulations are more lax than New Jersey's regulation anyway. *See id.*

8

would need to *plausibly* allege that the prices on the shirts DiCicco purchased were not the prices of those particular shirts *or any comparable shirts* during the relevant period in the relevant area.

Importantly, because DiCicco is only a percipient witness to the prices he observed on October 24, 2019, the Complaint relies on a supposed investigation by counsel to support the allegation that PVH's tag prices on that day were "fictitious." Compl. ¶¶ 49-50. But the description of this investigation is woefully lacking. In violation of Rule 9(b), the Complaint does not say when it took place, which stores were visited, what prices were observed, or whether counsel tracked the prices of DiCicco's shirts. And even if one were to generously assume that the investigation covered the relevant period beginning 90 days before DiCicco's October 24, 2019 purchase and continuing for 60 days thereafter, and that counsel tracked the prices of Van Heusen clothing (including DiCicco's shirts) at every New Jersey-area store that carries Van Heusen products, the Complaint *still* falls short of Rule 8(a)'s plausibility standard. That is because counsel's investigation was limited to checking the prices of Van Heusen clothing (Compl. ¶¶ 49-50); there is no allegation of any investigation into the prices of *comparable* clothing sold by other brands. Thus, the investigation was too narrow in scope to support the allegation that PVH violated N.J.A.C. § 13:45A-9.6. Simply put, DiCicco has no way of knowing whether, during the relevant period, comparable shirts to those he bought were offered or sold by other retailers at the same or higher prices than the tag prices he encountered on October 24. As such, his allegation that the tag prices of the shirts he bought were "fictitious" is pure speculation.

DiCicco has no response to this argument. Instead, the Opposition tries to dodge it by rewriting the Complaint. As PVH's moving brief repeatedly noted (at 3, 7, 20), the Complaint admits that DiCicco believed the Van Heusen reference prices could refer to the price of a "similar item" sold by "another retailer." Compl. ¶ 4. The Opposition tries to erase this allegation by

9

claiming that the reference prices purported to be "former prices for *the items*" and that "*the items*" were never sold by Van Heusen or anyone else at the listed price (Opp. 1 (emphasis added)), leaving out the possibility—which counsel did not investigate—that *other similar items* were.[5]

Just like Tripicchio did, DiCicco points out that his Complaint is very long, as though the plausibility test turns on a pleading's number of pages. Opp. 21-22. Again, the problem is not that the Complaint fails to plead what DiCicco saw at the Van Heusen store—those details abound (Compl. ¶¶ 73-112)—but that the investigation it describes (*id.* ¶¶ 49-50) was too narrow in scope to *plausibly* establish that the tag prices DiCicco saw were "fictitious" as the regulation defines that term. PVH is not insisting that DiCicco plead the evidence collected through the investigation. Instead, PVH's point is that the Complaint does not describe an investigation that *could have* garnered evidence sufficient to plausibly establish that PVH violated New Jersey law. And because the Opposition does not contend that such an investigation took place, much less that it could be described in an amended pleading, DiCicco's claims should be dismissed with prejudice.

## III.     THE COMPLAINT'S PROPOSED CLASS PERIOD IS PARTIALLY BARRED

A proposed class may be narrowed on a motion to dismiss where, as here, a portion of the class would be time-barred. *See* Mov. Br. 24; *see also Barrett v. Forest Labs.*, 39 F. Supp. 3d 407, 459-60 (S.D.N.Y. 2014). DiCicco cites authority that the filing of a complaint tolls the statute of limitations for all proposed class members, but those cases do not hold that the filing of a *different lawsuit by a different plaintiff* (i.e., Tripicchio) has that same tolling effect.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in its moving brief, PVH respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety with prejudice.

---

[5] The Opposition also notes that New Jersey makes it the seller's burden to prove its prices are bona fide (Opp. 19 n.9), but that has nothing to do with the binding federal law that places the initial pleading burden on DiCicco.

10

| | |
|---|---|
| Dated: February 24, 2020<br>New York, NY | By: <u>/s/ Lawrence I. Weinstein</u><br>**PROSKAUER ROSE LLP**<br>Lawrence I. Weinstein<br>Jeffrey H. Warshafsky<br>Eleven Times Square<br>New York, NY 10036<br>Tel. (212) 969-3000<br>Fax (212) 969-2900<br>lweinstein@proskauer.com<br>jwarshafsky@proskauer.com<br><br>Attorneys for Defendant |