USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: September 2, 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT DICICCO, *individually and on behalf of all others similarly situated*,

                                  Plaintiffs,

              - against -

PVH CORPORATION,

                                  Defendant.

**OPINION AND ORDER**

19 Civ. 11092 (ER)

Ramos, D.J.:

      Robert DiCicco brought this putative class action against the PVH Corporation ("PVH"),[1] asserting claims under the New Jersey Consumer Fraud Act ("NJCFA"), the New Jersey Truth in Consumer Contract, Warranty and Notice Act, and the implied covenant of good faith and fair dealing.[2]  Specifically, DiCicco alleges that PVH, a clothing manufacturer, engages in a sales practice of listing "fictitious" and "inflated" former prices on price tags of items that have purportedly been discounted so as to induce consumers into believing that they are getting a deal. PVH now moves to dismiss the complaint.  For the reasons set forth below, PVH's motion is GRANTED.

---

[1] According to PVH, its actual name is PVH Retail Stores LLC.  *See* Doc. 9, at 1.

[2] Although the complaint also claims that PVH violated federal pricing regulations, it is well established that the Federal Trade Commission ("FTC") regulations quoted in the complaint may be enforced only by the Commission, not private litigants.  *See*, *e.g.*, *Oliver v. United States Bancorp*, No. 14 Civ. 8948 (PKC), 2015 WL 4111908, at *6 (S.D.N.Y. July 8, 2015) ("Notwithstanding plaintiffs' conclusory reference to the FTC Act, it is well settled that there is no private right of action under the statute") (internal citations omitted).

I.   BACKGROUND

  A. Factual Background

DiCicco is a resident of New Jersey.  *See* Compl., Doc. 1, ¶ 17.  PVH, a Delaware apparel corporation with its headquarters in New York, owns and operates several Van Heusen outlet stores in New Jersey.  *See id*. ¶¶ 20-22.

Before filing the instant lawsuit, DiCicco and his counsel had allegedly made "visits to multiple Van Heusen company stores in New Jersey, on multiple dates," and stores of other retailers that sell PVH's products such as Kohl's, Macy's and JCPenney, to observe the extent and frequency of the sales and discounts PVH offers on its products.  *See id*. ¶ 49.  DiCicco's counsel had also used a computer program to track "virtually every item offered for sale" on those retailers' websites over the years, the data collected from which purportedly confirmed that PVH's products are "generally" on sale, and "in most cases rarely" offered at their regular prices.  *See id*. ¶ 50.

On October 24, 2019, DiCicco visited PVH's Van Heusen outlet store (the "October 24 visit") in Blackwood, New Jersey.  *Id*. ¶ 17, 55.  At that time, the store had hung large banners stating that the "entire store on SALE" and "ALMOST EVERYTHING…60 to 70% off."  *Id*.  During that visit, DiCicco purchased a women's plaid crewneck shirt, a women's notched collar shirt, and a men's knit long-sleeve shirt, all at vastly discounted prices.[3]  *Id*. ¶¶ 78, 89, 100.  DiCicco claims that the listed original prices on those items are "wholly fictitious" because they do not represent the "actual prices at which the same or comparable items were ever sold or

---

[3] According to the sales receipts, the women's plaid crewneck shirt was listed at $68.00, and DiCicco actually paid $27.20.  *Id*. ¶ 56.  DiCicco paid $13.50 for the women's notched collar shirt, which was listed at $58.00, *Id*. ¶¶ 89–91, and $15.29 for the men's knit long-sleeve shirt, which was listed at $65.00.  *Id*. ¶¶ 100–102.

2

offered for sale for a substantial period of time by anyone" anywhere. *Id*. ¶¶ 10–11, 81–85, 92–94, 173–175. DiCicco further claims that any savings that he received were illusory because the discounted prices were effectively the same prices regularly charged for those items by PVH. *Id*. ¶¶ 98–99, 171. Finally, DiCicco claims that he would not have paid any money to PVH but for the fraudulent discounted prices. *Id*. ¶ 176.

DiCicco asserts that PVH's practice of fraudulent price discount advertising violates the NJCFA, the New Jersey Truth in Consumer Contract, Warranty and Notice Act, and the implied covenant of good faith and fair dealing, and seeks both declaratory and injunctive relief under the New Jersey Declaratory Judgment Act. *See generally id*.

### B. Procedural History

DiCicco commenced the instant action on December 3, 2019.[4] Doc. 1. That same day, DiCicco also filed a statement of relatedness representing that the instant action contains identical factual allegations as in *Tripicchio v. PVH Corporation*, No. 19 Civ. 5729 (ER) (S.D.N.Y.). Doc. 3. On January 23, 2020, PVH moved to dismiss on the basis that the complaint fails to state a claim pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). Doc. 8.

## II.   LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable

---

[4] Prior to the instant lawsuit, DiCicco's counsel had brought two similar lawsuits against PVH on behalf of a different plaintiff named Vincent Tripicchio. *See Tripicchio v. PVH Corporation*, No. 19 Civ. 5729 (ER) (S.D.N.Y.); *see also Tripicchio v. PVH Corporation*, No. 19 Civ. 6147 (JGK) (S.D.N.Y.). In case No. 19 Civ. 5729, PVH was granted leave to file a motion to dismiss on the basis, *inter alia*, that Tripicchio was not a bona fide shopper but instead visited PVH's store with the intention of filing a lawsuit. Tripicchio voluntarily dismissed that suit before PVH's motion was due. Tripicchio withdrew from case No. 19 Civ. 6147 a few days later and was replaced by another plaintiff.

3

inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiffs' claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. N.Y.C.*, 458 F.3d 150, 155 (2d Cir. 2006)).

### B. Heightened Pleading Standard under Rule 9(b)

Beyond the requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the heightened pleading requirements of the Federal Rule of Civil Procedure 9(b) by stating the circumstances constituting fraud with particularity. *See*, *e.g.*, *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir.2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–20 (2007)). Specifically, Rule 9(b) requires a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro v. Clinique Laboratories, LLC*, 572 Fed. App'x. 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). Put another way, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *See U.S. ex rel. Kester v. Novartis Pharm. Corp.,* 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

## III. DISCUSSION

### A. Pleadings Under Rule 9(b)

Each of DiCicco's claims is expressly based on his allegations that PVH engages in fraudulent price discount advertising by listing "fictitious" former prices on its products. PVH contends that DiCicco has not plausibly alleged the circumstances constituting the fraud with the requisite particularity under the heightened pleading standards set forth in Rule 9(b). The Court agrees.

Under New Jersey's pricing regulation, "[a]n advertiser shall not use a fictitious former price." N.J.A.C. § 13:45 A-9.6. A former price is considered fictitious if it cannot be supported with proof that it was: (1) the price at which a substantial number of sales of the item or

comparable merchandise was sold in the advertiser's trade area in the 60 days before or after the price was advertised, or (2) the price at which the item or comparable merchandise was offered for sale in the advertiser's trade area for at least 28 days of the most recent 90 days before the price was advertised.  *See id.*

It is well settled that claims sounding in fraud must allege at minimum all essential facts that would accompany "the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue."[5]  *See Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006)) (internal quotation marks omitted); *see also United States ex. Rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017).  In the context of claims alleging false discount pricing, generalized allegations of an investigation do not suffice under Rule 9(b).  *See Rael v. Dooney & Bourke, Inc.*, No. 16 Civ. 371 (JM), 2016 WL 3952219, at *3 (S.D. Cal. July 22, 2016).  Courts have found that Rule 9(b) demands that the plaintiff "conduct a precomplaint investigation in sufficient depth," to ensure that the fraud charge is "responsible and supported, rather than defamatory and extortionate." *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 738 (7th Cir. 2014) (citation omitted).

DiCicco's factual allegations include:  (1) an investigation that consists of visits to multiple Van Heusen company stores in New Jersey on multiple dates, as well as the stores of other retailers to observe the extent and frequency of the sales offered by PVH; (2) data compiled via a computer program from three retailers' websites over the years; and (3) his October 24 visit to a Van Heusen outlet store.  These allegations lack the requisite particularity required by Rule

---

[5] DiCicco notes in his opposition that NJCFA places the burden upon the advertiser to prove that its prices are not fictitious.  However, DiCicco is in a federal court, and thus he must still comply with the federal pleading standards under Rule 12(b)(6) and Rule 9(b).

9(b).  To begin, DiCicco's generalized description of his counsel's investigation omits any mention of which store locations were visited, when the visits took place, what items were investigated, and at what prices the unidentified items were offered for sale on those unidentified dates.  Also missing from DiCicco's one-paragraph summary of the computer program used to track the websites of three department stores is any allegation that it also tracked any PVH or Van Heusen websites.  Such vague assertions of an investigation do not serve Rule 9(b)'s purpose of putting PVH on notice of the precise misconduct alleged, so that PVH can properly defend itself.  *See Rael*, 2016 WL 3952219, at *3 (finding similarly vague assertions of an investigation of defendant's outlet store prices added "no facts or substance" to the plaintiff's complaint.).

      To be sure, courts have allowed plaintiffs to plead a complex and lengthy fraudulent scheme by pleading the scheme with particularity and providing a few "representative examples," as opposed to requiring recitation of the details of every instance where the scheme has been used.  *See U.S. v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (internal citations omitted).  However, such examples will only support generalized allegations of fraud to the extent that they are "sufficiently representative," such that a court may "infer with reasonable accuracy" the alleged fraudulent scheme.  *Id*.  DiCicco has not done so here, as there is no factual allegation tending to show that the former prices listed for the three items that he purchased during his October 24 visit were fictitious, and not the prices at which either PVH or other retailers previously offered those items or comparable items for sale.

      Contrary to his assertion, the price tags, sales receipt, and the banners hung on the store's front on October 24, 2020 only show that those items were on sale that day, not that they were always on sale.  *Cf. Camasta*, 761 F.3d at 738. (affirming dismissal of complaint alleging false

discount pricing and explaining that the mere fact that Jos. A. Bank has frequent sales of various items does not support an inference that those sales were fraudulent or deceptive"). But New Jersey regulations do not prohibit a retailer from offering discounts, or even an extended sale event at a particular store, provided that the former prices listed are not fictitious. *Cf. Waldron v. Jos. A. Bank Clothiers, Inc.*, No. 12 Civ. 2060 (DMC), 2013 WL 12131719, at *3 (D.N.J. Jan. 28, 2013) ("It is common practice for retail marketing to advertise promotions and sales events throughout any given year.") Nor does the investigation cure this defect, as the complaint does not allege that either DiCicco or his counsel observed the price of these three items or comparable items during store visits, or that the computer program tracked the price thereof. Simply put, DiCicco has alleged no facts on which an inference can be drawn that the listed former prices of the items he purchased during the October 24 visit were not actually their former prices.

Accordingly, DiCicco has failed to plead facts, plausibly and with the requisite particularity required by Rule 9(b), supporting his generalized assertions that PVH engages in a fraudulent practice of listing fictitious former prices on its products. This alone warrants dismissal of the instant action because each of his claims is based on the allegation that PVH lists fictitious former prices on its products.

### B. DiCicco's Claim Under The New Jersey Consumer Fraud Act

Even if PVH's purported practice were pled with the requisite particularity, PVH contends, as a separate basis for dismissal, that DiCicco has also failed to plausibly allege that he was injured by PVH's purportedly false discount pricing.

The NJCFA was enacted in 1960 in response to "rampant consumer complaints about fraudulent practices in the marketplace." *See Thiedemann v. Mercedes-Benz U.S.A., LLC*, 872

8

A.2d 783, 791 (N.J. 2005).  In order to state a claim under the NJCFA, a private litigant must plausibly allege:  "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (internal citations omitted).

The NJCFA, in its original form, authorized the New Jersey Attorney General to bring an action thereunder without having to prove damages.[6]  *See Thiedemann*, 872 A.2d at 791.  When the Act was later expanded to include a private right of action, the New Jersey legislature added, as a prerequisite to such an action, that a plaintiff must show that "he or she suffered an ascertainable loss as a result of the unlawful conduct." *Id*. (internal citations and quotation marks omitted).  The ascertainable loss requirement serves as "an integral check upon the balance struck by the CFA between the consuming public and sellers of goods." *Id* at 794.

An ascertainable loss is one that is "quantifiable or measurable," and not "hypothetical or illusory." *See Annecharico v. Raymour & Flanigan*, No. 16 Civ. 1652 (FLW), 2016 WL 7015615, at *7 (D.N.J. Nov. 30, 2016) (internal citations omitted).  In actions alleging product misrepresentation, a plaintiff may show ascertainable loss by demonstrating either that he suffered an "out-of-pocket loss" or that he failed to receive the "benefit of the bargain." *See id*. (internal citations omitted).

*Out-of-pocket Loss*

To adequately plead an out-of-pocket loss, a plaintiff must allege one of the following: (1) "that he spent money, or in the future, needs to spend money, addressing the alleged NJCFA

---

[6] DiCicco's argument that if PVH's alleged practice of listing fictitious former prices is deemed not to have caused him an ascertainable loss, New Jersey's prohibition on fictitious pricing "would be reduced to meaningless surplusage," misses the mark.  Doc. 11, at 3 n.1.  Unlike private litigants, the New Jersey Attorney General may challenge such a practice without having to show any loss, and thus a remedy still exists.

violations, *i.e.*, repair costs" or (2) that the products purchased were "essentially worthless." *Id*. Here, DiCicco neither alleges that the Van Heusen items he purchased were worthless, nor that he was caused to spend additional money as a result of PVH's conduct. Rather, DiCicco contends that an out-of-pocket loss occurs whenever a false statement by the seller causes a customer to pay money to the seller which they would not otherwise have paid. *See* Doc. 11 at 22. The Court disagrees.

Contrary to his assertion, neither *Lee v. Carter-Reed*, 4 A.3d 561 (N.J. 2010) nor *Dicuio v. Brother Int'l*, No. 11 Civ. 447, 2012 WL 3278917 (D.N.J. Aug. 9, 2012) holds otherwise. Although the Court in *Lee* did find that the purchase price of the dietary supplement at issue constituted an out-of-pocket-loss under the NJCFA, it did so based on the plaintiff's allegation that defendant falsely promised its dietary supplement would reduce belly fat when it did not do so, rendering the supplement "worthless" for its advertised use. 4 A.3d at 568, 580. In *Dicuio*, plaintiffs alleged that defendant sold printers containing three separate color toner cartridges without sufficiently disclosing that replacement of all three cartridges was required when any one of them was depleted. 2012 WL 3278917, at *2–3. The plaintiffs claimed that they were forced to spend more money on replacement cartridges than they reasonably expected when they bought the printers. *Id*., at *3. The *Dicuio* court found that out-of-pocket loss was sufficiently alleged because the plaintiffs alleged having to purchase replacement printer cartridges due to defendants' omissions. *Id*., at *7.

DiCicco also relies on *Munning v. Gap, Inc.*("Gap"), 238 F. Supp. 3d 1195 (N.D.Cal. 2017). In *Munning*, the plaintiff purchased items of clothing on Gap's website that were advertised as being on sale but were allegedly never offered for sale at the prices listed on the websites. *See generally id*. The *Munning* court found that the plaintiff sufficiently alleged an

out-of-pocket loss by alleging that she paid Gap $108 in reliance on the false promise that she was receiving discounted merchandise and that she would not have paid any money otherwise. *See generally id*.

This Court respectfully declines to follow the *Munning* court's holding.  The *Munning* court, noting that Gap failed to sufficiently address *Dicuio*, expressly relied on *Dicuio* in finding that "an out-of-pocket loss can occur even where a plaintiff is misled into purchasing something of value."  *Id*. at 1201.  As discussed above, *Dicuio* only supports that proposition insofar as a plaintiff can show that he was forced to spend additional money as a result of the defendant's false advertising.  Indeed, this is evident from the *Munning* court's own characterization of *Dicuio* as "finding an out-of-pocket loss where plaintiffs expended funds to purchase additional color toner cartridges to replace non-exhausted cartridges and where plaintiffs stated they would not have purchased them but for seller's misrepresentations."  *See id*.  Here, DiCicco has not alleged that he had to spend additional money as a result of having bought the Van Heusen products, or that they are worthless.  Accordingly, DiCicco has not alleged an out-of-pocket loss.

*Benefit-of-the-Bargain*

The benefit-of-the-bargain theory requires a customer to plead that he was deceived into purchasing a product that is "ultimately worth less than the product that was promised." *Mladenov v. Wegmans Food Mkts, Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015) (citing *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011)).  While the difference in value between the product promised and the one actually delivered often manifests as "some defect or flaw in the product," it is also present in cases where a product is falsely held out as having some objective quality or features it actually lacks.  *Smajlaj*, 782 F. Supp. 2d at 99.  For example, in *Smajlaj*, the Court held that where soup was falsely advertised as having "25% less sodium" than

regular soup, ascertainable loss was established by the difference in retail price between what plaintiffs paid for the purportedly lower-sodium soup and what they actually received.  *See id*.

As PVH correctly points out, DiCicco does not allege that the Van Heusen products he bought were defective, or that they were missing any objective quality or feature promised or advertised by PVH.  Nor does he allege that he was dissatisfied with those items, ever tried to return them, or demanded a refund from PVH.[7]  Rather, he claims that PVH deprived him of the benefit of the bargain by failing to deliver the promised discounts.  However, New Jersey courts have dismissed NJCFA claims making allegations of false discount price advertising that are similar to those in the instant action.  For example, in *Hoffman v. Macy's*, the plaintiff alleged that Macy's falsely advertised at a sales event where it purportedly offered various housewares at great discounts, a Nespresso machine he bought for $299.99 as having a "regular price" of $625.00, and a manufacturer's suggested retail price ("MSRP") of $499.99.  2011 WL 6585, at *1 (N.J. Super. Ct. App. Div. June 28, 2010), *cert. denied*, 6 A.3d 441 (N.J. 2010).  Like DiCicco, the plaintiff in *Hoffman* similarly claimed that the Nespresso machine he bought "had never previously [been] sold" at $625.00, and the MSRP was "well below" $499.99.  *Id*.  The New Jersey Appellate Division, citing extensively to the New Jersey Supreme Court's decision in *Thiedemann*, found that plaintiff failed to show an ascertainable loss.  *Id*. at * 2.  The Appellate Division held unequivocally that the claim that defendant "misrepresented the MSRP or "regular price" of the Nespresso machine "provide[d] no basis for establishing an 'ascertainable loss.'"  *Id*.  The holding in *Hoffman* is consistent with holdings by an

---

[7] In his opposition, DiCicco ignores PVH's argument that he did not suffer an ascertainable loss because he never sought to return the Van Heusen products he purchased despite claiming that he would not have bought them but for the promised savings.  DiCicco has therefore conceded that argument.  *See*, *e.g.*, *Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17 Civ. 5846 (VSB), 2018 WL 4759754, at *5 (S.D.N.Y. Sep. 30, 2018) (finding argument conceded where plaintiffs failed to oppose it).

overwhelming majority of courts including courts in this district, that disappointed bargain-hunters do not suffer any actual injuries or damages simply because they did not get as good a deal as they expected under consumer protection laws that similarly adopt the loss of the benefit of the bargain theory.[8]  *See, e.g., Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 12 (1st Cir. 2017) (interpreting the Massachusetts Consumer Protection Act); *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 679–81 (6th Cir. 2017) (interpreting the Ohio Consumer Sales Practices Act); *Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) (interpreting the Illinois Consumer Fraud and Deceptive Business Practices Act); *DaCorta v. Am. Retail Grp., Inc.*, No. 16 Civ. 1748 (NSR), 2018 WL 557909, at *7–8 (S.D.N.Y. Jan. 23, 2018) (interpreting New York General Business Law); *Irvine v. Kate Spade and Co.*, No. 16 Civ. 7300 (JMF), 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017) (same).

DiCicco's contention that *Furst v. Einstein Moomjy*, 860 A.2d 435 (N.J. 2004), and *Cannon v. Ashburn Corp.*, No. 16 Civ. 1452 (RMB/AMD), 2016 WL 7130913 (D.N.J. Dec. 7, 2016), supports his theory of injury is similarly unpersuasive.[9]

In *Furst*, the plaintiff paid $1,199 for a carpet tagged with a regular price of $5,775.  860 A.2d at 439.  Upon delivery, the plaintiff discovered that the carpet he received was both damaged and smaller than the one he had selected.  *Id*.  Claiming the carpet plaintiff saw in the

---

[8] DiCicco points to the Ninth Circuit Court of Appeals' holding in *Hinojos v. Kohl's Corp.*, applying California law, that a disappointed bargain hunter may suffer actual injury based on his subjective valuation of the product.  718 F.3d 1098, 1104 (9th Cir. 2013).  However, as another court in this district observed, *Hinojos* is "in tension" with holdings of other federal courts that disappointed bargain hunters do not allege any actual injury simply because they did not get "as good a deal as they had hoped."  *See Belcastro v. Burberry Ltd.*, No. 16 Civ. 1080 (VEC), 2017 WL 744596, at *3 (S.D.N.Y. Feb. 23, 2017).  In any event, unlike California law, New Jersey law does not recognize a plaintiff's subjective disappointment as an actionable form of injury.  *See Thiedemann*, 872 A.2d at 795 ("Subjective assertions without more are insufficient."); *Hoffman*, 2011 WL 6585, at *3 ("[N]o rational fact finder could conclude that plaintiffs suffered an objectively ascertainable loss or damage").

[9] DiCicco also cites to case law holding that a plaintiff need not plead the precise amount of the ascertainable loss, or evidentiary material establishing the loss, which PVH does not dispute.  *See* Doc. 11 at 5–7.

13

store had been mistakenly tagged with the wrong sale price, defendant offered to deliver a replacement carpet only if plaintiff paid the difference between the wrongfully tagged sale price and what plaintiff actually paid.  As such, *Furst* was a defective product case that did not involve false discount advertising.  By the time the case came before the New Jersey Supreme Court on appeal, there was no dispute that the defendant had violated the NJCFA and that the plaintiff had suffered an ascertainable loss.  The only dispute, as relevant here, was simply how to calculate that loss.

The New Jersey Supreme Court held that "when a merchant violates the [NJCFA] by delivering defective goods and then refusing to provide conforming goods, a customer's ascertainable loss is the replacement value of those goods." *Id*. at 440.  As a result, plaintiff, who argued that $5,775 was the true value of the carpet he contracted to buy, was entitled on remand to use that price as evidence of the carpet's replacement value.  *Id*.  As such, the holding in *Furst* does not support DiCicco's theory of injury.[10]  In reaching its holding, the New Jersey Supreme Court explained that a "merchant who promises a product at a particular price must…either deliver the product or render its replacement value." *Id*. at 442.  Here, DiCicco received precisely the Van Heusen products he saw and selected.  In addition, he asserts that those products' true market value is what he paid.  In other words, DiCicco got exactly what he paid for.

Finally, DiCicco's reliance on *Cannon* is also misplaced.  In *Cannon*, the plaintiffs alleged that the defendant advertised fictional or inflated original prices for bottles of wine sold on its website.  2016 WL 7130913, at *1–2.  While the *Cannon* court found by a "slim margin" that plaintiffs have alleged a loss of the benefit of the bargain by alleging that the bottles of wine

---

[10] The Court notes that *Hoffman*, which post-dated *Furst*, held that a seller's misrepresentation of a product's MSRP or "regular price" provided no basis for such a loss.  The New Jersey Supreme Court declined certiorari in *Hoffman*.

they received were less valuable than the bottles advertised, it did so primarily on the basis of two factors that distinguish *Cannon* from the instant case. *Id*. at *7–8. First, the *Cannon* court made that finding relying on the complaint's allegations as to the "actual values of the wines in question," which included independent reviews by reputable wine magazines as well as inquiries to the winemaker and winery. *Id*. at *8 n.5. Here, the only allegations as to the actual value of PVH's clothing products are regarding their prices. In addition, the *Cannon* court expressly recognized that wine is "unique," as distinguished from articles of clothing, in that customers rely on the original price as indicator of the market value of a wine. *Id*. Therefore, DiCicco's contention that *Cannon* supports his theory of injury is unpersuasive.

Accordingly, DiCicco has also not alleged a loss of the "benefit-of-the-bargain" because his alleged injury that PVH failed to deliver the discounts it promised is not one that New Jersey courts have recognized as an "ascertainable loss." For all the foregoing reasons, his NJCFA claim must be dismissed.

### C. DiCicco's Remaining Claims[11]

It is well settled that the New Jersey Truth in Consumer Contract and Warranty Notice Act ("TCCWNA") does not establish separate consumer rights or seller responsibilities, but rather "bolsters rights and responsibilities established by other laws." *Watkins v. Dineequity, Inc.*, 591 F. App'x 132, 134 (3d Cir. 2014) (citing *Shelton v. Restaurant.com*, 70 A.3d 544, 558 (N.J. 2013)). Here, DiCicco's TCCWNA claim is premised on PVH's alleged CFA violation. Compl. ¶ 183. Accordingly, because DiCicco fails to state a claim under NJCFA, his TCCWNA claim must also be dismissed. *See Grisafi v. Sony Elecs, Inc.*, No. 18 Civ. 8494 (JMV), 2019

---

[11] Because all of DiCicco's claims are dismissed, the Court does not reach the parties' dispute as to whether the first six months of the proposed class period, beginning on June 18, 2013, is barred by New Jersey's six-year statute of limitations for fraud claims.

WL 1930756, at *9 (D.N.J. Apr. 30, 2019) ("Plaintiff draws its TCCWNA from Defendant's alleged CFA violation…The Court has dismissed Plaintiff's CFA claim, therefore the TCCWNA claim based on the alleged CFA violation also fails").  Furthermore, DiCicco's TCCWNA also fails because he is not an "aggrieved consumer," a required element of a TCCWNA claim, as his only alleged basis for being an "aggrieved consumer" is that he "suffered an ascertainable loss under the CFA."  Compl. ¶ 185; *see also Spade v. Select Comfort Corp.*, 181 A.3d 969, 981 (N.J. 2018).  In any event, because his TCCWNA claim is based on his allegation that PVH listed fictitious former prices for its products, it also fails because he fails to allege such practice with the required particularity under Rule 9(b).

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead "actual injury."  *Reilly v. Ceridien Corp.*, No. 10 Civ. 5142 (JLL), 2011 WL 735512, at *5 n.2 (D.N.J. Feb. 22, 2011).  Here, the only injury described is the loss of the promised discounts.  Therefore, for substantially the same reasons, DiCicco's claim for breach of the implied covenant of good faith and fair dealing must also be dismissed.

DiCicco's only remaining claim under the New Jersey Uniform Declaratory Judgment Act seeks relief based on his CFA, TCCWNA and implied covenant claims, and thus is dismissed as well.

### D.  Leave to Amend

Lastly, PVH urges this Court to dismiss each of DiCicco's claims with prejudice on the basis that it is "inconceivable" that any amendment could supply the missing facts for either:  (1) DiCicco's failure to allege that he was injured by PVH's conduct;  or (2) his failure to satisfy Rule 9(b) with respect to PVH's purportedly fraudulent conduct.  However, the Second Circuit, in *Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo Securities, LLC*, reaffirmed the "liberal

spirit" of amendment under Federal Rule of Civil Procedure 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  797 F.3d 160, 190–91 (2d Cir. 2015) (internal citations omitted).  Here, DiCicco has not previously amended the complaint, and the Court does not find that amendment would necessarily be futile.  For example, it is still possible for DiCicco to provide more details about the investigation of PVH's sales practices, and to offer additional allegations about the actual value of the Van Heusen items he purchased, or an objective basis to determine that they were different from what was promised. Therefore, the instant action is dismissed without prejudice and DiCicco is permitted, if he wishes, to file an amended complaint.

## IV. CONCLUSION

For the reasons set forth above, PVH's motion to dismiss is granted without prejudice.  If DiCicco wishes to file an amended complaint, he must do so by September 23, 2020.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 8.

It is SO ORDERED.

Dated:  September 2, 2020
        New York, New York

_____
Edgardo Ramos, U.S.D.J.